(19 App. Div. 392.)

POTTER v. COLLIS et al.

(Supreme Court, Appellate Division, First Department. July 2, 1897.)

1. MUNICIPAL PROPERTY—LEGISLATIVE CONTROL.
   The legislative power, unless restricted by special constitutional provision, is absolute as to the control over the property of municipal corporations held by them for public use.

2. SAME—RAILROADS—FRANCHISE IN STREETS—RIGHTS OF CITY.
   By Laws 1854, c. 140, the legislature conferred upon the E. R. R. Co., a corporation incorporated under the general railroad act, a franchise to operate its road in the city of New York; the fee of some of the streets through which it was to run being in the city. By Laws 1874, c. 478, the legislature required the E. R. R. Co. to extend its tracks through certain streets, to run its cars thereon as often as public convenience should require, and provided that, when the extension should be completed, the company should use, maintain, and operate its railroad, during the term for which it was incorporated, upon and along the streets on which its railroad was already in use, and upon and over the extension. *Held* that, as the legislature had power to confer a franchise, both for the building of the new lines and for the operation of the road over the old tracks, and to subordinate any right or interest of the city of New York in the streets to the operation of such public use, any rights in respect to the railroad of the company, acquired by the city by contract or otherwise, which were inconsistent with the grant of the act of 1874, including a right claimed to belong to the city to acquire possession of the road, were at least suspended during the period for which the company was directed to operate its road; and the company could not be restrained from making improvements to its road, for which it had acquired the necessary consents of property owners and public authorities, on the ground that such improvement would impose an additional burden on the exercise of the city's alleged right.

3. STATUTES—UNITY OF TITLE AND SUBJECT
   An act entitled "An act to require the E. R. R. Co. to extend its railroad in the city of New York, and to regulate the use and operation of the railroad of said company," which specifies a particular piece of road to be con-

structed, regulates the running of cars thereon, and the rates of fare and the duration of the franchise, refers to but one subject, and does not violate section 16 of article 3 of the constitution of the state.

**4. STREET RAILROADS—MOTIVE POWER—OVERHEAD WIRES—PERMITS.**

The railroad commissioners are as much bound as any other persons by the prohibition of overhead electrical wires in the city of New York, and a permit from the board of electrical control is not required, in order to maintain the legislative policy in this respect, when the consent of the railroad commissioners and of the owners of property would otherwise be sufficient to authorize a change of motive power by a street-railroad company in New York City from horses to electricity.

**5. SAME—PERMIT TO OPEN STREETS—MANDAMUS.**

A street-railroad company, which has complied with the requirements of law in respect to obtaining authority to change its motive power, becomes entitled to a permit to open the streets along its route for purposes necessary in making such change, and the granting of such permits by the proper public officers may be enforced by mandamus.

**6. PUBLIC OFFICERS—POWERS—PERMITS.**

When permits from two public officials are required for the doing of work, the fact that a permit from one has not already been obtained is no reason for restraining the granting of a permit by the other, or for declaring it void if granted.

Appeal from trial term.

Action by Eugene Clifford Potter against Charles H. T. Collis, as commissioner of public works of the city of New York, and the mayor, etc., the Eighth Avenue Railroad Company, and the Metropolitan Street-Railway Company. From an° order denying a motion for injunction, plaintiff and defendants, the commissioner and the mayor appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, INGRAHAM, and PARKER, JJ.

Wheeler H. Peckham, for plaintiff appellant.

William L. Turner, for appellant mayor, etc.

James C. Carter and Elihu Root, for respondents.

INGRAHAM, J. The plaintiff, as a taxpayer, brings this action to restrain the commissioner of public works from issuing a permit or giving permission to the defendants the Metropolitan Street-Railway Company and the Eighth Avenue Railroad Company, or either of them, to make excavations in any of the streets or avenues of the city, for the purpose of changing the railroad operated by the said defendant corporations from a horse railroad to an electric road, to be operated by underground currents of electricity, and to declare any permit null and void which had been issued by the commissioner of public works. The plaintiff, as a taxpayer, insists upon his right to maintain this action under the provisions of chapter 301 of the Laws of 1892 and section 1925 of the Code of Civil Procedure. Section 1 of chapter 301 of the Laws of 1892 provides that "all officers, agents, commissioners and other persons, acting or who have acted for or on behalf of any county, town, village or municipal corporation in this state, and each and every one of them, may be prosecuted and an action or actions may be maintained against them to prevent any illegal official act on the part of any such officers, agents," etc., by any person or corporation whose assessments shall amount to $1,000, and

who shall be liable to pay taxes on such assessments in the county, town, village, or municipal corporation, to prevent the waste or injury of whose property the action is brought.   Section 1925 of the Code provides that an action to obtain a judgment preventing waste of, or injury to, the estate, funds, or other property of a county, town, city, or incorporated village of the state, may be maintained either by a citizen resident therein, or by a corporation, who is assessed for, and is liable to pay, or within one year before the commencement of the action has paid, a tax therein.   To justify an action against a public officer, or an officer of a municipal corporation, under the provisions of either of these laws, the act complained of, and which the action seeks to restrain, must be an illegal official act, or the action must be to prevent waste or injury to, or to make good, any property, funds, or estate of the municipal corporation.   We have first to determine, therefore, whether, upon the allegations of the complaint and the affidavits submitted to the court below, the commissioner of public works, in issuing the permit described in the complaint, did, or threatened to do, any illegal official act, and whether that act was a waste or injury to any property, funds, or estate of the city of New York.   If these defendant railroad companies were entitled by law to this permit, so that, if the commissioner of public works had refused to grant it, he would have been required to act by mandamus, it must be quite apparent that his act in granting the permit would not be an illegal official act, and would not be a waste of, or injury to, the property of the city which would justify the court in restraining him from issuing or giving effect to the permit.   The Eighth Avenue Railroad Company is incorporated under the general railroad act of this state, and for upwards of 40 years has been operating a railroad upon Eighth avenue and other streets and avenues in the city of New York.   It has recently leased its road, under a lease the validity of which is not attacked, to the defendant the Metropolitan Street-Railway Company.   Subsequent thereto the Metropolitan Street-Railway Company and the Eighth Avenue Railroad Company united in an application to the board of railroad commissioners of the state of New York for the approval by the board of a change of motive power from horse to underground current of electricity upon the railroad of the Eighth Avenue Railroad Company, which is operated by the Metropolitan Street-Railway Company; and, after a full hearing before that board, the application was granted, and the said board approved of a change of motive power from horses to an underground current of electricity upon such railroad, operated by the Metropolitan Street-Railway Company.   It also appears that the consent of more than one-half of the property owners bounded on the streets and avenues through which the railroad, with respect to which the change of motive power is proposed, runs has been obtained, and upon this action of the railroad commissioners, and these consents, the defendant railroad companies applied to the commissioner of public works for a permit to open the streets for the purpose of making the change in construction made necessary by the change in motive power.   This permit was granted by the commissioner of public works, and it was to declare such permit invalid, and to restrain the commissioner of

public works from granting or recognizing the same, that this action was brought.

In the discussion of this question we must keep clearly in mind the power of the legislature over the property of municipal corporations held by them for public use. The principle may be stated, in its broadest sense, as settled by repeated adjudications of the courts of this state, that the legislative power, unless restricted by special constitutional provision, is absolute as to the control over such property so held by municipal corporations. The legislature may direct a municipal corporation to apply the property held by it to any public use which the legislature, in its discretion, considers will be for the benefit of the public. So far as the public interests in the streets of the city of New York are affected, the power of the legislature over them is absolute, subject to express restrictions contained in the constitution. Thus Judge Dillon, in his work on Municipal Corporations (volume 2, p. 780, § 657), says: "As respects the public or municipalities, there is no limit upon the power of the legislature as to the use to which streets may be devoted." And this principle has been applied many times by the courts of this state. In the case of People v. Kerr, 27 N. Y. 192, it was expressly held that, so far as the existing public rights in the streets of the city of New York are concerned,—such as the right of passage over them as common highways,—the legislature has supreme control over them; that, so long as the use to which a highway or any other public property or right is to be applied is a public use, it is a matter of discretion in the legislature to permit its application or transfer, and the people must question their action elsewhere than in the courts. And in the case of Darlington v. Mayor, etc., of New York, 31 N. Y. 167, it was distinctly held that the legislature had the power to divert any of the property held by the city to any public use that concerned the city or its inhabitants. Judge Dillon, in speaking of the general legislative power of municipal corporations, says:

"The legislature, as the trustee for the general public, has full control over the public property and the subordinate rights of municipal corporations. Accordingly, it may authorize the railroad company to occupy the streets in a city without its consent, and without payment." 1 Dill. Mun. Corp. § 71, p. 121.

And in Re New York El. R. Co., 70 N. Y. 327, it was expressly held that the constitutional provisions of the state of New York do not prohibit a private or local bill amending the charter of a private corporation by regulating powers, rights, privileges, and franchises which it previously possessed; that a bill may be passed to regulate and control the right to lay down tracks previously existing, or to give new privileges or franchises, provided they be not exclusive; and that a bill may also be passed waiving a forfeiture of corporate rights, or giving a private railroad corporation the right to use new motive power, provided the right be not exclusive.

The legislature has thus the absolute power to require the municipal corporation of the city of New York to apply the property held by it for such public use as the legislature shall direct. It had the power to grant to a railroad company the use of the streets for a railroad. People v. Kerr, supra; Kellinger v. Railroad Co., 50 N. Y.

206. It had also the right to apply any other property or property right held by the city of New York to such a public use, without compensation to the city.

By chapter 140 of the Laws of 1854 there was conferred upon the Eighth Avenue Railroad Company a franchise to operate this road in the city of New York, which was the first authority to operate this road that had been attempted to be granted. The city of New York held the fee of a portion of the streets upon which this railroad company was to exercise its franchise, under the act of 1854, above mentioned, in trust for the public, to be used as public streets; and thus the right or title of the city to these public streets, as well as whatever rights, if any, it had acquired under the contract made in pursuance of this resolution of 1851 and act of 1854, was subject to the control of the legislature.

In the year 1874 the legislature passed an act, being chapter 478 of the Laws of that year, the first section of which provided:

"For the better accommodation of the public, the Eighth Avenue Railroad Company is hereby required, as soon as practicable, to extend its existing railroad tracks from their present terminus in the Eighth avenue, in the city of New York," through and along certain streets and avenues mentioned.

The section further provided:

"When the said company shall have completed the extension of its railroad as required by this act, it shall run its cars thereon as often as the public convenience may require, and for the transportation of each passenger upon its railroad route when so extended, it shall be lawful for said company to charge and receive the same fares now charged by it, for the conveyance of passengers, and no more."

By this section this company was required to extend its tracks and to transport passengers upon the extended route for the same fare that it had received for transportation over its existing road; and we must assume that this was done in the interest of the public. The second section of the statute then provided:

"When the extension required by this act shall be completed and put in operation, said company shall use, maintain and operate its railroad during the term for which said company was incorporated upon and along the several streets and avenues in the city of New York upon and over which its railroad is now in use and operation and upon and over such extension."

In pursuance of this statute, the company built the extension required, and since that time has operated its road upon its tracks as they existed prior to the passage of the act, as well as upon the tracks built as required by this act.

We are referred to no constitutional provision then existing which affected the power of the legislature to pass this act requiring the railroad company to build this extension, and to operate its road, as therein provided, after the extension had been built. As we have seen, the power of the legislature to authorize the use of the streets was exclusive and absolute. It had power to permit and require this corporation to build its road and extend its tracks as in the act provided. It had power to confer a franchise upon the company for the operation of the road thus directed to be built. It had power to confer a franchise for the operation of the railroad upon the old tracks, and to subordinate any right or interest held by the city of

New York in its streets to the operation of this public use; and whatever rights, if any, the city had under the original resolutions and contract of 1851, being subject to the control of the legislature, which were inconsistent with the grant of the act of 1874, were at least suspended during the period for which this company was, in express terms, authorized and directed to use, maintain, and operate its road. This view is entirely consistent with that expressed by the court of appeals in the case of Mayor, etc., of New York v. Eighth Ave. R. Co., 118 N. Y. 398, 23 N. E. 550. That action was brought to recover a license fee for cars used by the defendant in the operation of its road. It was held that the act of 1874 had no application to the obligation of the defendant to pay such license fee to the city of New York. The right to operate the road during the period for which the company was organized was not at all inconsistent with the obligation of the defendant to pay the license fee to the city. Here, however, the right granted to the railroad company to operate the road for a fixed period is entirely inconsistent with the right of the city to acquire possession of the road during that period, and thus oust the railroad company from its franchises, and prevent its exercising the right expressly granted to it by the act in question. That during all that period it will be liable to the city of New York for the license is settled by the case above cited, but the principle there settled has no application to the right of the city to terminate this right or franchise, granted, in express terms, by the legislatur . There is nothing in this case of Mayor, etc., of New York v. Eighth Ave. R. Co. which can be construed to hold that the franchise which, by the express provisions of the act of 1874, was conferred upon this defendant is invalid, or can be abridged or destroyed by the act of the city of New York, or any authority other than the sovereignty that granted it.

Assuming, therefore, for the purposes of this case, that the right of the city to acquire this railroad would justify a taxpayer in restraining the city authorities from permitting a change of motive power, on the ground that it would impose additional burdens upon the city, when it elected to exercise the right alleged to have been reserved by the resolutions of 1851, and the contract executed in pursuance thereof, it is clear that the provisions of the act of 1874 at least suspended the right of the city to exercise any such privilege or option during the period that the company was directly required to use, maintain, and operate its railroad; and the railroad company having obtained the consent of a majority of the owners of property upon the road for a change of its motive power, and having obtained the authority of the railroad commissioners, as provided by section 100 of the railroad law, it was entitled to a permit from the commissioner of public works to open the streets for the purpose of making the change in the construction of its road or roadbed rendered necessary by the change in its motive power. The act of the commissioner in issuing the permit was, therefore, not an illegal act, which the court would enjoin.

There are other objections to the validity and effect of this act of 1874 quite strenuously insisted on by the plaintiff. They have

all been examined, but we do not think that any of them affect the validity of the act, or prevent the effect which we have indicated from being given to it. It is also insisted in the briefs submitted by the learned counsel for the plaintiff that this act is unconstitutional, as violating the constitution of the United States and the constitution of the state of New York. We have before stated our views as to the power of the legislature over property held by municipal corporations in trust for the public, or for the inhabitants of the city, and it seems to us clear that the constitutionality of such control is not open for discussion in this state. It is also insisted that this act is in violation of section 16 of article 3 of the constitution of this state. We think, however, that the act is not invalid for this reason. The title of the act is "An act to require the Eighth Avenue Railroad Company to extend its railroad route in the city of New York, and to regulate the use and operation of the railroad of said company." There is but one subject referred to in the act,— that is, the construction and maintenance of a railroad in the city of New York, to be constructed and operated by the Eighth Avenue Railroad Company. That subject is plainly expressed in the title. The particular piece of road that the company is to construct is specified, and the company is required to construct it; and then the use and maintenance of the road which the Eighth Avenue Railroad Company is to operate is fixed, and the time during which it is so to operate and maintain the road is also fixed. Most of the special acts authorizing the construction and maintenance of railroads would be void if this objection were held to be well taken. In the special acts passed for the incorporation of railroad companies, under which many of the railroads in this state are at present operated, the act incorporates the company, fixes the route, provides the term for which the franchise shall last, and regulates the construction, maintenance, and operation of the road. It has never been suggested that such an act included more than one subject, and certainly this act provides for nothing more than the construction of a portion of the road which would make the railroad of the defendant a completed railroad, and for the exercise of the franchise to operate the road for the period during which such franchise is granted.

It is claimed by the plaintiff that a permit from the board of electrical control is necessary before the defendant can construct its track. It is quite clear that, if this were so, it would not make the permit of the commissioner of public works an illegal act. If the railroad company is entitled to such a permit from the commissioner of public works, the mere fact that a permit from other public authorities is also required would not make the act of the commissioner of public works, granting a permit that he was required by law to grant, illegal, and justify the court in granting an injunction to restrain his action. There were, however, argued with this case the cases of Eisler v. Railroad Co., 46 N. Y. Supp. 1090, and Roberts v. Railroad Co., Id. 1100, which are actions brought by property owners abutting upon the streets through which this road runs; and in those cases an injunction is asked restraining the railroad companies from changing the motive power to elec-

tricity, without the permit of the board of electrical control, on the ground that such construction would be without authority of law, and therefore a public nuisance; and it is urged that, if authorization of the railroad commissioners, independent of the board of electrical control, is sufficient for the change of motive power in the case at bar, the city may be inundated with overhead trolley wires, and the object sought to be obtained by the establishment of the board of electrical control frustrated. We do not see that any such result can follow. The prohibition of overhead wires is just as binding upon the railroad commissioners as upon any citizen. General prohibitory legislation in aid of a well-established legislative policy is not repealed by subsequent legislation, unless inconsistent therewith. The powers conferred upon the railroad commissioners can all be exercised without infringing upon the prohibition of overhead wires. Well-known systems of electrical power exist which require no overhead wires, and it is to be presumed that, when the legislature authorized a change to electrical power by a railroad, it meant power applied in a way which would not contravene its established policy as to overhead wires. The railroad company having complied with the provisions of section 100 of the railroad law, having obtained the consent of a majority of the owners of property upon the streets, and the change having been approved by the state board of railroad commissioners, and not conflicting with any recognized law of the state, it became authorized, by virtue of the express provisions of this section, to make any change in the construction of its road or roadbed, or other property, rendered necessary by the change of its motive power. If a permit from either the commissioner of public works or the board of electrical control was necessary to enable it to open the streets along its route for the prosecution of a work legally authorized, those public authorities were bound to issue such permit or permits, and this right to a permit would be enforced by mandamus. This was expressly held by the court of appeals in Re Third Ave. R. Co., 121 N. Y. 539, 24 N. E. 951. It was there held that, under the provisions of chapter 531 of the Laws of 1889, which contain substantially the same provisions as section 100 of the railroad law, before cited, the Third Avenue Railroad Company was authorized to change its motive power from horse to cable; and a mandamus was granted compelling the commissioner of public works to issue a permit to the railroad company to open the streets along the route of its road, to introduce the cable system. The same rule applied in that case would be applicable here; and, if an application were made to the board of electrical control for a permit, and refused, the board could be compelled by mandamus to issue a permit, if such permit were necessary to enable the railroad companies to exercise the authority given to them by the section of the railroad law before cited. Under such circumstances, a court of equity would not be authorized to issue an injunction restraining the defendants from proceeding, especially as it appears that no work has yet been done, and it does not appear that the defendants propose to enter upon the streets without such permit.

Without passing upon the other questions presented, or express-

ing any opinion upon them, for the reasons before stated, we think the order appealed from was clearly right, and it should be affirmed, with $10 costs and disbursements.    All concur.