### CITY OF UTICA v. UTICA TEL. CO.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. TELEPHONE COMPANIES—RIGHT TO ERECT POLES AND LINES IN STREETS.

The charter of the city of Utica (Laws 1862, c. 18) empowers the common council to act as commissioners of highways in the city, and to require the removal of any obstruction on a street; to determine what are nuisances, and abate them; and to prevent all encroachments on streets, alleys, and highways. Laws 1894, c. 437, amending such charter, provides (section 99) that the council may cause any street to be graded and paved, and to cause such walks, sewers, and drains to be made and repaired as it deems necessary. *Held*, that a telephone company is not given the right to erect its poles and lines in the streets of such city, though the abutting owners consent to their erection, without its consent, and in violation of its ordinances, by the transportation corporation law (2 Rev. St. [9th Ed.] p. 1363) art. 8, § 102, which provides that such a company may construct and maintain the necessary fixtures for its lines on roads, streets, or any other land, subject to the right of the owners to compensation, and that, if it cannot agree with the owners as to compensation, it shall be ascertained in the manner provided in the condemnation law.

2. INJUNCTION—REMEDY AT LAW.

A city may maintain an action to enjoin a telephone company from erecting its poles and lines on the streets in violation of ordinances prohibiting such erection without the city's consent, and providing penalties for their violation; and such action is not open to the objection that the city is seeking to enforce its ordinances by injunction, and that the remedy is at law, for the collection of the penalty.

Hardin, P. J., and Adams, J., dissenting.

Appeal from special term, Onondaga county.

Action by the city of Utica against the Utica Telephone Company for an injunction. From an order denying defendant's motion to vacate an injunction granted by a justice of the supreme court, re-

straining defendant from erecting telephone poles in the city of Utica, defendant appeals.    Affirmed.

The action is an equitable one, and commenced in August, 1897.    The complaint alleged that the defendant, its officers, etc., had entered upon the streets, sidewalks, and public places of the city of Utica, and had erected, maintained, and continued to erect and maintain, poles and wires in the streets, public places, and sidewalks of the city in great numbers, upon various streets of the city, naming them, which are an obstruction to the free and public use of the streets and sidewalks, without permission of the plaintiff, or of any of its authorized officers.    An injunction was obtained by the plaintiff restraining the defendant, during the pendency of the action, from doing the acts complained of, and the complaint demanded judgment to that effect, and that the defendant be required to remove from the streets of the city the poles and wires and other obstructions of the defendant.    The plaintiff is a municipal corporation, incorporated under chapter 18 of the Laws of 1862 (being the city charter) and the various acts amendatory thereof.    The defendant was incorporated under article 8 of the General Laws of the State of New York, known as the "Transportation Corporation Law," being chapter 566 of the Laws of 1890, said section 8 providing for the incorporation of telegraph and telephone corporations.    In 1884 the Baxter Overland Telephone & Telegraph Company of Central New York (being a corporation) applied to the common council of the city of Utica for permission to string their lines through the city, and a permission was granted on the 2d May, 1884, in the following resolution:    "Resolved, that permission is hereby given the Baxter Overland Telephone & Telegraph Company of Central New York to string their wires across the streets of the city; also from housetops at such points as may be necessary, and at which owners of property may give their consent; such wires to be so erected as not to interfere with the free and full use of the streets, and to be erected subject to the approval of the city surveyor."    This company not only strung wires as permitted by the resolution, but erected poles in various parts of the city, and connected their wires to them, and operated a telegraph and telephone line until the spring of 1897, when the concern went into the hands of a receiver, and its property and franchises were sold, and purchased by the defendant.    The defendant then applied to the common council of the city to be confirmed in the rights and privileges which it had purchased of the Baxter Overland Telegraph & Telephone Company, and the further right to conduct the business of furnishing complete telephonic communications in the city of Utica, subject to certain conditions named.    This the common council refused, and granted no permission whatever to the defendant to establish or operate its lines in the city.    The defendant, however, proceeded to remove the decayed poles of the old line, substitute new ones, and take all the steps necessary to establish and operate its telephone line. Its poles were placed between the curb and the sidewalk, and were 3 feet in circumference, and from 25 to 40 feet high, and it was proceeding to complete its structures, and threatening to continue to do so, until arrested by the injunction.    There was a telephone line in operation in the city known as the "Central New York Telephone Company," having its lines through the streets of the city and its poles erected.    There were also the Western Union Telegraph and Postal Telegraph and other lines in operation, so that the streets upon which the defendant's line was to be operated was more or less occupied by other telegraph poles and structures before the defendant applied to the common council.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. M. Mills, for appellant.

John Brandegee, for respondent.

WARD, J.    The defendant claims the right to construct and operate its telephone line without the consent of the city, under section

102 of chapter 566 of the Laws of 1890, being the transportation corporation law, which provides:

"Such corporation [telegraph and telephone] may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways; and through or across or under any of the waters within the limits of this state, and upon, through or over any other land, subject to the right of the owner thereof to full compensation for the same."

It also claims that, having acquired the right of the Baxter Overland Telephone & Telegraph Company, it can, under the franchise of that company, construct and operate its telephone lines.

The last claim will be disposed of first. The right of that company, as the foregoing statement shows, was limited to stretching wires across the streets and along the housetops, where the owners consented. It conferred no authority to put structures in the streets or do any of the acts complained of by the city in this action, and is therefore no protection to the defendant in doing any act beyond the limited permission given to the old company by the common council. The serious question is whether, under the statute cited, the legislature intended to permit any telephone or telegraph corporation that might be organized under the transportation corporation act to occupy the streets of the city of Utica, and to leave the city powerless to prevent it. If this is so, any company may invade the streets, to the absolute interference with the business, travel, and comfort of its citizens. The learned counsel for the defendant cites several cases which have been decided by the courts of this state that he claims sustain his contention. They are People v. Metropolitan Telephone & Telegraph Co., 11 Abb. N. C. 304; Id., 31 Hun, 596; Telegraph Co. v. Hess, 125 N. Y. 641, 26 N. E. 919; Eels v. Telegraph Co., 143 N. Y. 133, 38 N. E. 202; Hudson River Tel. Co. v. Watervliet Turnpike & Ry. Co., 135 N. Y. 396, 38 N. E. 148; Id., 121 N. Y. 397, 24 N. E. 832. An examination of these cases fails to show any judicial sanction for the particular contention here Indeed, there is much in those cases that tends to overthrow that contention. We will not review them in detail, but refer to them to some extent hereafter.

We have not been referred to any case where the claim has been asserted of the right contended for under the statute cited. The question is therefore new, and must be decided, not only upon a consideration of this statute, but of the powers and duties of the plaintiff as a municipal corporation, with reference to the streets of the city, as created by the charter and the ordinances of the city, and also the principles governing the rights of the public in the streets and highways, as well as corporations exercising special privileges in the streets. By the charter of the city of Utica, the common council was given the power to perform the duties and be subject to the liabilities of commissioners of highways in towns, with the exceptions and modifications contained in the charter itself. It should also have the power to "lay out, open, make, amend, repair, alter, extend, widen, contract, and discontinue lanes, highways, walks, bridges, drains, and sewers in the city," and to require the removal of any building, fence, or other obstruction upon the line of any

street.   Section 35 of the charter provides that the common council "shall have the care, management, and control of the property of the city and its finances; it shall have power to ordain, alter, modify, and repeal ordinances not repugnant to the constitution and laws of this state, such as it shall deem expedient for the good government of the city, the preservation of peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules, and regulations as may be necessary to carry such power into effect." It is also particularly authorized to enact ordinances for the following purposes:   "To determine what are nuisances, and prevent, abate, and remove them; to ascertain, establish, and settle the boundaries of the city, and all streets, alleys, and highways therein, and to remove and prevent all encroachments thereon."   By an amendment to the Utica charter in May, 1894 (chapter 437 of the Laws of that year), the legislature provided (section 99):

"The common council shall have power to cause any street, highway, lane or alley in said city to be graded, leveled, paved, or re-paved, macadamized or telfordized, and to cause such cross walks, sidewalks, drains and sewers to be made therein as it shall deem necessary, and the same to be repaired, mended or relaid as it shall deem necessary."

This amendment, it will be observed, was enacted several years after the provision of the transportation corporation law, in 1890, whereby the legislature again affirmed the right of the city to control its streets.   In pursuance of the power given the city under section 35 of the charter above quoted, the city adopted ordinances, which were in force when the injunction in this action was granted, forbidding the placing in any street of any obstruction thereof without permission of the mayor, etc.; forbidding the placing in any street of any wood, lumber, or other material or property of value; forbidding any person to take up any pavement in any street or side or cross walk, or dig any hole or ditch in any street, without permission of the mayor, etc.; providing that no person should place in any street any ashes, or any other obstruction to the use of the same by wagons, sleighs, etc.; providing that the sidewalks and crosswalks of the city, being intended for the public accommodation and convenience, should be kept and reserved free from all obstruction; providing that all telegraph and telephone wires should be placed beneath the fire-alarm telegraph of said city.

There is no dispute but that this last ordinance was violated by the defendant.   Penalties were attached to the violation of these ordinances.   These provisions of the charter and of the ordinances are ample for the protection of the streets and the public that use them.   The legislature had authorized them, and had constituted the city the agency to enforce them.   They are necessary powers, and without them the city streets would be subject to all kinds of encroachments, and their usefulness impaired, if not destroyed.   The right to invade the streets with telephone lines, secured by the transportation corporation act, must necessarily be subordinate to the right and duty of the city to keep its streets and sidewalks free and

sufficient for the public use. Some power or jurisdiction must be the judge as to whether the proposed line will impair the usefulness of the streets. That power is given to the city, where it must necessarily reside.

Take the case in hand. Several corporations were already occupying the streets of Utica with their poles and appliances when the defendant applied to the common council for leave to construct and operate its plant. The question for the common council to meet was whether the defendant's structures would impair the usefulness of the streets already incumbered with similar lines. In deciding that question, they were acting in a quasi judicial or discretionary character, with which the courts will not ordinarily interfere. Hines v. City of Lockport, 50 N. Y. 236; Mills v. City of Brooklyn, 32 N. Y. 489; City of Monongahela v. Monongahela Electric Light Co., 4 Am. Electrical Cas. 53. The transportation corporation act gave the defer.dant no interest in the streets of the city of Utica. It was only intended to protect telegraph and telephone companies from indictment for maintaining public nuisances in putting their poles in the streets. The legislature, in the exercise of its police powers, may regulate the use of the streets of a city, and may prohibit their use for any purpose inconsistent with general street purposes. It may also authorize their use for public purposes not inconsistent with their use as streets. Eels v. Telegraph Co. (Sup.) 20 N. Y. Supp. 600, affirmed 43 N. Y. 641, 38 N. E. 202; Cohen v. Mayor, etc., 113 N. Y. 532, 21 N. E. 700. And see Judge Adams' opinion in Delaware, L. & W. R. Co. v. City of Buffalo, 4 App. Div. 562–567, 38 N. Y. Supp. 510.

Section 102 of the transportation corporation act, above cited, first appeared in the statutes of this state in chapter 265 of the Laws of 1848. Section 5 of that act contained the provision we are considering. There was an amendment to that chapter in 1853. Prior to the Revision of 1890, section 5 read as does section 102 of the transportation corporation law, except that it was provided that the lines should not be so constructed as to incommode the public use of the roads or highways. This last provision was omitted from the Revision of 1890, and it is suggested by the learned counsel for the appellant that the omission of these words in the Revision is significant of the intention of the legislature to permit the telephone lines to be constructed in the streets and highways, whether they incommode the public use of the streets and roads or not. We cannot suppose that the legislature intended such an extraordinary result by this omission. That contention is answered emphatically in the case of Hudson River Tel. Co. v. Watervliet Turnpike & Ry. Co., 135 N. Y. 393, 407, 32 N. E. 150, where the court of appeals says:

"The primary and dominant purpose of a street is for public passage, and any appropriation of it by a legislative sanction to other objects must be deemed to be in subordination to this use, unless a contrary intent is clearly expressed."

There is no contrary intent expressed in the transportation corporation law. The counsel makes it an inference only from the omis-

sion, which is not supported by reason or authority. The Utica city charter is a local law, and we are not to presume that the legislature intended by the general telephone act to repeal or nullify the provisions of the charter governing the admission of telephone and telegraph lines into the city, in the absence of any legislative declaration to that effect. And the provisions of the telephone act are not so far inconsistent to the city charter as to create such a repeal by implication.

We cannot better conclude the discussion of this branch of the case than with a quotation from City of Monongahela v. Monongahela Electric Light Co., supra:

"All legislative grants to corporations simply to occupy the streets are made subject to the police powers of the municipality. Where the legislature has given a general grant to enter the streets of the city till the city, in the exercise of its police powers, can supervise and control the erection and maintenace of its poles and wires, to say that a corporation which has the right to erect poles in the public highway can do so without any restraint whatever, and without any liability to have the exercise of that right regulated with reference to the rights of other persons exercised upon the same highway, or the rights of the municipality, appears to be the assertion of a proposition which would practically take the control of the streets out of the hands of the city, and place them in the hands of individuals or corporations."

The appellant's counsel makes the point that the plaintiff is seeking to enforce the ordinances of the city by injunction, which cannot be done, and that the remedy is at law, for the collection of the penalty. If the action was simply to enforce the ordinances and realize penalties, the objection would have force. But this action goes far beyond such narrow bounds. It is sought in this action to restrain acts that cannot be compensated by damages. It is sought to prevent irreparable mischief. The mischief which it seeks to guard against, if consummated, would find no adequate remedy at law. The ordinances are simply referred to as indicating the power of the city in regard to its streets, and the exercise of that power, to some extent, in the creation of its ordinances. No penalties are sought to be recovered. This is purely an equitable action, and the right to maintain it upon the record presented to us upon this appeal would seem to be clear. The order appealed from should be affirmed, with $10 costs and disbursements. All concur, except HARDIN, P. J., and ADAMS, J., dissenting.

---

Appeal from an order made at the Onondaga special term on the 20th of August, 1897, denying the defendant's motion to vacate the injunction granted ex parte August 5, 1897, by a justice of this court, which injunction order was in the following language: "Ordered, that during the pendency of this action, and until the final determination thereof, or until the further order of the court, defendant and its officers, agents, and employés be, and they are and each of them is hereby, enjoined and restrained from erecting any poles, or stringing any wires, or placing any obstructions, or digging any holes in, upon, or over the streets or sidewalks of the city of Utica, without

permission therefor by the duly-constituted authorities of said city."
This action was commenced on the 2d of August, 1897.

Plaintiff's complaint alleges that its common council on or about June 26, 1897, adopted a resolution "declaring that no telephone or telegraph poles be set in any street in the city without the consent of the common council be first obtained." The complaint alleges that the defendant, prior to the 26th of June, 1897, and since, "entered upon the streets, sidewalks, and public places of said city, and has erected and maintained, and has continued to erect and maintain, poles and wires in said streets, public places, and sidewalks, in great numbers." The plaintiff's complaint prays that the defendant be enjoined from "further proceeding to erect its poles or string its wires upon any of the streets or sidewalks of the city of Utica, and from placing in any of said streets or sidewalks any obstruction, or any pole or wire, without the permission of said common council and of the duly-authorized agents and officers of plaintiff. * * *"

Defendant's answer alleges that it is incorporated under the transportation corporation law, being chapter 566 of the Laws of 1890, and that the business of the defendant is "the constructing, owning, establishing, and maintaining lines of electric telephone, for the transmission of messages by electricity over the same, within and through the city of Utica, its suburbs, and adjoining communities; * * * and this defendant has, in the pursuance of its said business, procured to be erected for it a large number of poles and fixtures for its telephonic system, and wires to be strung thereon, in, through, and over the streets and sidewalks of the city of Utica, as by law it has the right to do, and it has connected the same with a large number of residences and business places of the inhabitants and business men of the said city of Utica." The answer further alleges that all the poles and wires are necessary and indispensable to the defendant, "and that each and all of them are so erected and placed as not to incommode or obstruct the use of the said streets or sidewalks by the public." The answer also alleges the incorporation of the Baxter Overland Telephone & Telegraph Company of Central New York, and that the same was organized, under the laws of the state of New York, for the purpose of constructing, owning, establishing, and maintaining lines of electric telephone in the city of Utica, and that it "established and maintained poles, fixtures, and erections, upon which it strung its wires, and connected the same with a large number of residences and business places of the inhabitants and business men of the said city of Utica." It is further averred in the answer that in May, 1884, the plaintiff, "through and by the action and resolution of its common council, then and there having the power therefor, duly granted to the said Baxter Overland Telephone & Telegraph Company of Central New York a franchise, right, and privilege to erect its said telephonic system and string its wires over and across and through the streets of the said city of Utica," and that the company did erect a large number of poles and fixtures, and thereon strung its wires. It is also further averred in the answer that "afterwards, and before the commencement of this action, and while the said Baxter Overland Telephone & Telegraph Company of Central New York was using the said poles and wires, and the said franchise and privilege, and had fully exercised the same, the defendant above named, by negotiation and purchase and sale, for a valuable consideration by it paid, acquired and had assigned and transferred to it from the said Baxter Overland Telephone & Telegraph Company of Central New York all its said poles, fixtures, erections, and wires, and the said franchise and privilege from the city of Utica, and all its rights, privileges, and franchise of establishing and maintaining and constructing a telephonic system, * * * and especially did it acquire those poles which had then and theretofore been erected in Main street, John street, Bleeker street, Columbia and Catharine streets, in the said city of Utica, as well as those that were on the other streets of said city, and this defendant became the successor to the said Baxter Overland Telephone & Telegraph Company of Central New York in and to the said business, and became the owner and still is the owner of all the said poles, fixtures, erections, and wires, and of the aforesaid franchise, privilege, and right to erect."

In the affidavits used it appears that the defendant has procured from each and every one of the owners of the lots and premises abutting on the streets

and sidewalks through and over which the defendant's line is so constructed "the consents and permission of the owners for the erection of the said poles and the construction of the said line, except a very few poles, where the ownership is in doubt." And it is further said, viz. "that all of the said adjoining and abutting owners are willing, and have expressed their willingness, to have the said poles erected in front of their premises, and no owner has objected thereto."

In the appeal papers it appears that the common council applied to the corporation counsel for an opinion, in July, 1897, in the premises, which he prepared, in which he cited chapter 265 of the Laws of 1848, chapter 471 of the Laws of 1853, and chapter 566 of the Laws of 1890, and quoted section 102 of that chapter, which provides as follows: "Such corporation may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways, and through, across or under any of the waters within the limits of this state, and upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same." He concludes his opinion in the following language: "I therefore hold that if the Utica Telephone Company is incorporated under article 8 of chapter 566 of the Laws of 1890, and that if the fixtures it has constructed in the streets of the city of Utica are necessary for its lines of telephone, then it has the right, without any permit, license, or franchise from this common council, to construct its telephone lines within the streets of the city of Utica, subject at all times to the private property right in the street of abutting owners. I believe, however, that said company will be subject to any reasonable local regulations, made by the proper local authorities, for the purpose of keeping its streets in a safe condition, but such regulations must not be prohibitory. Thos. D. Watkins, Corp. Counsel."

Apparently the defendant has encountered the opposition of a rival company, the Central New York Telegraph & Telephone Company.

HARDIN, P. J. (dissenting). In article 8 of the transportation corporation law, in section 100, provision is made for the incorporation of electric telegraph and telephone companies, and in section 101 it is provided that any such corporation "may construct, own, use and maintain any line of electric telegraph or telephone, not described in its original certificate of incorporation." Section 102 is as follows:

"Such corporation may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways; and through, across or under any of the waters within the limits of this state, and upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same. If any such corporation cannot agree with such owner or owners upon the compensation to be paid therefor, such compensation shall be ascertained in the manner provided in the condemnation law." 2 Rev. St. (9th Ed.) p. 1363.

In People v. Metropolitan Telephone & Telegraph Co., 31 Hun, 600 et seq., the acts of 1848 and 1853 were under consideration, as the defendant in that case had erected its poles and lines under those statutes; and it was assumed in that case that they conferred authority upon a corporation to make such erections, and in the course of the opinion it was said:

"But, in doing so, it was restricted to those which were necessary for that purpose, and they were required to be so constructed as not to incommode the public use of the street. That is the extent of the right which the legislature has conferred upon such a corporation. And if it has been exceeded, and the public have been incommoded thereby, then, so far as that excess has extended, an unlawful appropriation of the street has been made by it, and that would constitute such a purpresture as would authorize the interference of this court for its correction."

And it is further said in the opinion in that case, viz.:

"To the extent to which the poles were necessary, either in size or height, the right to erect and maintain them was given by the legislature, and so far as they were within that authority they could not be alleged to be a nuisance, or an unlawful obstruction of the street, by the people. To that extent the right to erect and maintain the poles was legalized, but wherever that was exceeded, in their size or height, the defendant's act was unauthorized. This, as has already been stated, violated the implied restraint created by the statute, and was the legal subject of an action for redress. * * * To authorize the court to interfere with the existence of the poles there should have been a finding in some form showing which of them and to what extent they exceeded the necessary bounds prescribed by the statute. * * * In no possible view of the result of this trial can so much of the judgment be sustained as directed and required the removal of the defendant's telegraph poles from the street."

And it was further said near the close of the opinion, viz.:

"The right to remove either of the poles has in no form been secured to the plaintiff."

The validity of the acts of 1848 and 1853 was assumed in Telegraph Co. v. Hess, 125 N. Y. 641, 26 N. E. 919, and in that case it was said:

"The legislature, in the exercise of its police powers, may regulate the use of the streets of a city, and may prohibit their use for any purpose inconsistent with general street purposes. It may also authorize their use for public purposes not inconsistent with their use as streets."

In that case it was said that the statutes under consideration did not grant to a corporation "any interest in the streets of a city; at most it simply confers an authority or license to enter upon such streets for its purposes, subject to certain conditions."

In further considering the act of 1853 it is said:

"By said act the legislature in effect determines that the erection of poles and stringing of wires for the business of telegraph is a public use, not inconsistent with the use of the streets for general street purposes; and said act, having been passed in the exercise of the police power of the state, was not beyond the reach of future legislation. The license so granted, although acted upon, may be revoked or modified by the legislature at any time when the public interest demands it."

In referring to that case and the statute under consideration, in People v. Dolan, 126 N. Y. 176, 27 N. E. 271, it was said:

"In the language of the act, it is an authority to construct lines along and upon the public roads and highways. This license may also be revoked by legislative enactment. * * * Therefore, the value of the interest in the land in which a pole is placed in a public street by a telegraph company must be arrived at in consideration of the important fact that such interest is a mere license, and revocable at the pleasure of the legislature. It must also be observed that any other telegraph company organized under the general law may avail itself of the same license to enter upon the public streets. * * * This right or license is one which any company may avail itself of, if incorporated under the general act, and it costs nothing."

The power of the legislature over streets was adverted to in Delaware, L. & W. R. Co. v. City of Buffalo, 65 Hun, 467, 20 N. Y. Supp. 449, in the following language:

"It is the legislature alone that has the power to confer such rights in the streets of cities, as in the other highways of the state, and over them, so· far

as public rights alone are concerned, the control of the legislature is supreme. People v. Kerr, 27 N. Y. 188; Story v. Railroad Co., 90 N. Y. 122."

That case was before this court as reported in 4 App. Div. 567, 38 N. Y. Supp. 512, and the uses and purposes of a highway were adverted to in the opinion of Adams, J., and he said: "But such use is subject, of course, to legislative abridgment and restriction." The same doctrine was alluded to and reasserted in Potter v. Collis, 19 App. Div. 395 et seq., 46 N. Y. Supp. 471. It seems to follow, from the statute and from the interpretation that has been given of the power of the legislature, that the defendant was rightfully in the streets of the city of Utica at the time of the commencement of this action.

It is insisted, however, in behalf of the respondent, that the city, by its ordinances and through the action of its common council, had "the right to control the use of its streets and prohibit the obstruction thereof, and, if there be any possible conflict between them, the court will so construe them that, if possible, both shall stand." To support such contention the learned counsel for the respondent calls our attention to Eels v. Telegraph Co., 65 Hun, 516, 20 N. Y. Supp. 600, affirmed 143 N. Y. 133, 38 N. E. 202. The case differs from the one in hand. That was an action brought by an owner of land fronting on a rural public highway against a telephone company that had set up its poles in the highway for the purpose of supporting telegraph and telephone wires, and, as the defendant had done so without having acquired the right by condemnation proceedings, it was held that the owner might maintain an action of ejectment against it. As we have already intimated, the abutting owners in the case in hand have consented to the erection of the defendant's poles and lines, and their rights, therefore, are not now before us for consideration.

It is insisted in behalf of the respondent that the legislature, in the charter given to the city (Laws 1862, c. 18), has given to the common council the care, management, and control of the property of the city, and power to make ordinances for the government of the city and for the benefit of trade and commerce, and to make such rules and regulations as may be necessary to carry out such power. If we turn to section 35 of the charter (Laws 1862, p. 39), we find the following language:

"The common council shall have the care, management and control of the property of the city and its finances; it shall have power to ordain, alter, modify and repeal ordinances not repugnant to the constitution and laws of this state."

It seems that an ordinance which should prohibit the use of the plaintiff's streets for telephone lines and poles would be repugnant to section 102 of the transportation act already quoted. It may be conceded that the plaintiff has power to regulate and to prescribe rules for the erection of poles and the use of lines in the streets, and yet that would not give it the power to prohibit the use of streets in the manner in which the legislature has declared. The license given by section 102, already alluded to, is to the effect that the defendant "may erect, construct, and maintain the necessary fixtures for its

lines upon, over, or under any of the public roads, streets, and highways," and the enjoyment of that license must be reasonable, and without any acts which will "incommode the public use of the street." If the defendant has or shall exceed that right, given to it by the license, and the public become incommoded thereby, then the defendant may be guilty of "an unlawful appropriation of the street." Such unlawful appropriation "would constitute such a purpresture as would authorize the interference of this court for its correction."

As there is a conflict in the affidavits used upon the motion as to some of the essential facts, precisely what relief the plaintiff, if any, will be entitled to is not easily determined upon this appeal. It seems, however, that the injunction, in so far as it enjoined and restrained the defendant "from erecting any poles or stringing any wires," was too broad, and in that respect should be modified, and allowed to remain, so as to restrain placing any obstructions or digging any holes in or upon or over the streets or sidewalks of the city which might "incommode the public use of the street." People v. Metropolitan Telephone & Telegraph Co., 31 Hun, 601.

In 2 Am. & Eng. Enc. Law, 755, in a note, it is said:

"As a rule, however, the courts are slow to compel the removal of a public work or the suspension of its operation. If an injunction is granted at all, it is usually conditioned to be inoperative, provided the company makes proper compensation within a reasonable time."

The injunction order should be modified in accordance with the foregoing views, and, as modified, sustained.

ADAMS, J. (dissenting). I find myself unable to concur in the views expressed in the prevailing opinion in this case. While it is doubtless true that by the provisions of the transportation corporation law the defendant did not acquire any interest in the streets of the city of Utica, yet I think it equally clear that the legislature has granted to the defendant the use of such streets for the purpose of placing therein the necessary appliances for the proper conduct of its business as a telephone company, and that their use for such a purpose is not inconsistent with that for which they are primarily designed. I am also quite ready to concede that the privilege thus conferred is subject to the right of the municipality to exercise its supervisory police power over the streets, and, in the event that the defendant's poles are so placed as to obstruct or materially interfere with the ordinary use of the streets, to compel their removal. But I do not find anything in the record to indicate that there is any such obstruction or interference in this case. On the contrary, it is conceded that many of the defendant's poles were not only located and erected by the consent of the municipality, but that they were actually used as a support for the wires of the city fire-alarm system; and it appears that all of them have been erected inside of the curb, and in such a manner as not to encroach upon either the street or sidewalk. We have, therefore, simply the case of a municipality assuming to prohibit the erection of the defendant's poles anywhere in its streets, under the pretense that by so doing it is exercising the police power conferred upon it by the legislature. This, I think, is

an arbitrary and improper attempt to interfere with the rights which the defendant acquired under the act above referred to, and one which ought not to be sanctioned.

I am, therefore, in favor of vacating the plaintiff's injunction, and reversing the order appealed from.