[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 278 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 280 
The recovery of the plaintiff was had for license fees for horse cars annually run upon the railroad of the defendant. These license fees were authorized by chapter 513 of the Laws of 1860. That act provided for the construction of a railroad in Seventh avenue and in certain other streets and avenues mentioned, in the city of New York, and by section 2 it is provided as follows: "Section 2. Said railroad shall be constructed on the more approved plan for the construction of city railroads, and shall be run as often as the convenience of passengers may require, and shall be subject to such reasonable rules and regulations in respect thereto as the common council of the city of New York may, from time to time, by ordinance prescribe; and to the payment to the city of the same license fee annually for each car run thereon, as is now paid by other city railroads in said city; and the said persons and their assigns are hereby authorized to charge the same rate of fare for the conveyance of passengers on said railroad as is now charged by other city railroads in said city."
At the time of the passage of this act two railroad companies in the city of New York paid a license fee of $50 each per car, one paid a license fee of $20, and three paid no license fee whatever. One of the latter, the New York and Harlem Railroad Company, the year previous had paid a license fee of $50 per car. The section of the statute cited conferred upon the defendant authority to charge the same rate of fare as was paid by other city railroads in the city of New York, and the right of the city to collect license fees was evidently based upon the idea of privileges conferred by the franchise granted and as a compensation for the same. It may also be observed that the rate of fares was fixed by a reference to the charge made by other railroads in the city, and the license fee to be collected by the city by the amount paid for such fees by the said railroads. In each case the right was equally indefinite, and no certain amount was fixed by the statute as to either. The same difficulty would arise in ascertaining the respective amounts, and the enforcement of the payment of license fees would encounter no greater obstacle than the establishment *Page 281 
of the rate of fares which the company would be entitled to charge. Having in view the intention of the legislature and the purpose and object to be attained, it is very evident that the design was to authorize the collection of a certain sum of money for each car run on the railroad, and that the amount should be fixed and determined by the sum paid by other railroads in the city. So far there would seem to be no difficulty in construing the statute, and the only remaining question is, whether the provision in regard to the payment of license fees by other railroads is sufficiently clear and certain to enable the courts to fix the amount to be paid by the defendant. The words employed cannot mean all the other railroads of the city, whether they are railroads which pay or do not pay. They clearly exclude those that do not pay and must be restricted to those that do pay, and as a majority of the latter paid $50 and only one of them less than that amount, it is manifest that the intention of the statute was to include the majority. This interpretation is within the language and meaning and the clear purpose of the statute. When it is made to appear that the greater number of railroads paid a certain sum, it is equally manifest that they constituted "the other railroads in the city" within the intent and meaning of the act. The provision in the statute evidently referred to the fee which was generally paid at the time of the enactment of the law; to that which was paid by other cityrailroads, and not to the fee paid by one single railroad. A different construction would prevent the collection of any fee and render the statute inoperative and of no effect and should not be sanctioned. If any ambiguity exists as to the amount of the fee to be paid, then the greater amount should be adopted, for it is a well-settled rule that any ambiguity in a grant of privileges must operate against the grantee and in favor of the public. This is fully established by the adjudications in this country and in England. (Langdon v. Mayor, etc., 93 N.Y. 129;R. G.R.R. Co. v. Reid, 64 N.C. 158; Hartford Bridge Co. v. Union F. Co., 29 Conn. 210; Allegheny v. O. P.R.R.,
26 Penn. St. 355; Dugan v. Bridge Co., 27 id. 303; Bowling *Page 282 Green R.R. v. Warren Co., 10 Bush [Ky.], 711; Marion SavingsBk. v. Dunkin, 54 Ala. 471; Bridge Co. v. Hoboken L. I.Co., 13 N.J. Eq. 81; Florida R.R. Co. v. P.R. Co., 10 Fla. 145; Rice v. M. N.R.R. Co., 1 Black [U.S.], 358; Bradley
v. N.Y. N.H.R.R., 21 Conn. 294; Priestley v. Foulds, 2 Scott [new], 205; Kingston Dock Co. v. La Marche, 8 B. C. 42; Leeds Liverpool Canal v. Hustler, 1 id. 424;Stourbridge Canal Co. v. Wheeley, 2 B. Ad. 792; Gildart
v. Gladstone, 11 East, 675.) The fee of the streets being in the city for public purposes and upon public trusts, and the use of the streets being given to a private corporation for private gain without compensation, and the corporate authorities of the city being the representatives of the public in the assertion of their rights, the principles of construction stated should be held to apply the same as between corporations and individuals. The strictest rules of interpretation can, therefore, be properly invoked.
The contract of the defendant arises from the provisions of its charter by which it agrees to pay a certain sum reserved therein in consideration of the privileges conferred thereby. It is neither a tax, nor is it a penalty, and hence the technical rules as to penal actions or suits to recover a tax which are invoked by the appellant have no application.
The appellant's counsel claims that the ordinance of the common council of December 31, 1858, requiring every street railroad car running in that portion of the city where defendant's road is located, except one-horse cars, to pay annually $50 license fees, which ordinance is set forth or referred to in the complaint, on which the plaintiff relies, is ultra vires and wholly void, and reliance, to sustain this position, is placed upon the cases ofMayor, etc., v. Second Ave. R.R. Co. (32 N.Y. 261), andMayor, etc., v. Third Ave. R.R. Co. (33 id. 42). In the case of the Second Avenue Company the action was brought relying entirely upon the ordinance of the common council, and the objection urged to its enforcement was that the road was constructed under an agreement with the city which reserved no right to impose license fees, and it was *Page 283 
held that there was a contract, and that the ordinance was the imposition of an annual tax upon the company in derogation of its rights of property, and on that account was unlawful and void. This case does not decide that such an ordinance is invalid and void as to street railroad corporations, where the charter provides expressly that they shall be subject to the payment of license fees, as is the fact in reference to the defendant. The same question arose in the Third avenue case, with the simple difference that the reservation there was of a smaller license fee than was provided for in the ordinance. The action there was also to recover penalties for a violation of the ordinance. In both these cases the question arising as to the validity of the ordinance was considered, having in view only such roads as were constructed either without any reservation whatever in the charter, or a different one from that provided for by the ordinance. The decision of the court in the Second avenue case cannot, we think, be regarded as embracing any case except the one actually decided; and if, as is claimed by the appellant's counsel, it goes beyond this, it is not conclusive upon the question now presented.
The ordinance was, therefore, valid as to the city railroads which were required by their charters or by contract with the city to pay a given sum to the city in consideration of the privileges conferred. In cases of a grant by legislative power the right to collect the amount fixed as a license confers express authority to enforce the payment of the same, and in no sense can it be considered as the imposition of a tax or a penalty which is without the sanction of law.
It is also insisted that the power of the common council to impose any penalty or fine beyond $10 has been taken away, and we are referred to various provisions of law, which, it is claimed, sustain the position that the original power conferred by the Laws of 1813 to impose fines or penalties to the amount of $250 has been repealed by subsequent enactments reducing the amount to be paid to $10 in such cases. These provisions, we think, have no application to the case considered, and the ordinance in question does not impose a fine or penalty within *Page 284 
the meaning of the statutes cited. The statute under which the defendant was organized provides for the payment of a license fee the same as other railroads in the city, but does not name the amount. The ordinance simply carries out the provisions of the act by fixing the amount in accordance with that paid by the other railroads, and not arbitrarily as a fine or penalty. As the license fee provided for by the ordinance was authorized by law, and the city was entitled to collect and receive the same, we are unable to say that the common council exceeded its legitimate powers by the enactment of the ordinance in question.
The repeal of the ordinance on April 24, 1867, by resolution of the common council was rendered inoperative by the repeal of that resolution on October 28, 1867, and the ordinance thereby continued in full force and effect. (People v. Davis, 61 Barb. 456; Van Denburgh v. Greenbush, 66 N.Y. 1.)
It may be added that the claim of the plaintiff to recover in this action does not rest upon the ordinance alone, but depends upon the statute, which requires the payment of the license fees to the city independent of any ordinance. There would seem to be no valid reason why the city should not maintain an action to recover the license fee provided for by the statute. It clearly confers upon the city the right to such fees, and perhaps even without the ordinance an action would lie for their recovery.
There was no error in allowing interest upon the plaintiff's demand. This question is fully considered in the opinion of the General Term, and concurring in the views there expressed further discussion of the same is not demanded.
A number of other exceptions were taken upon the trial, which have been examined, but in none of them do we find any ground of error which would authorize a reversal of the judgment, and the same should be affirmed.
All concur, except RAPALLO, J., absent.
Judgment affirmed. *Page 285