THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF
   NEW YORK, Respondent, *v.* THE EIGHTH AVENUE RAILROAD
   COMPANY, Appellant.

In 1851 plaintiff entered into a contract with P. and others, under which
  they were authorized, and the consent of plaintiff's common council was
  given them, to construct and operate a horse railroad through certain
  streets in the city of New York, each of its cars to be annually licensed
  by the mayor, and such annual fee to be paid therefor as the common

council might determine. The company was organized and the road in part constructed prior to the passage of the street railroad act of 1854 (Chap. 140 of the Laws of 1854). In 1855, the company was incorporated under and by virtue of the General Railroad Act of 1850 (Chap. 140, Laws of 1850), and said act of 1854. The common council fixed the license fee for defendant's cars, and it paid the same from 1860 to 1874, when the Legislature passed an act (Chap. 478, Laws of 1874), requiring defendant to extend its route in said city, and providing that, when such extension was completed, defendant should operate its road, "subject only to the provisions of the General Railroad Act of this state, with its amendments." Defendant complied with the provisions of said act, and in this action to recover license fees claimed that, as no such fees were required by the General Railroad Act, it was relieved by said proviso from paying the same. *Held,* untenable; that the act of 1854 was *in pari materia* with the General Railroad Act, and in effect amended it by prohibiting the construction of a railroad upon the streets of a city save upon compliance with prescribed conditions; said act is, therefore, one of the acts subject to the provisions of which defendant holds and operates its road; also that there is nothing in the act of 1874 which limits, repeals or modifies the act of 1854.

Also, *held,* that although the grant to defendant and conditions imposed upon it by the common council were void when made, not being within its powers, they were ratified and confirmed by the act of 1854 and thus became valid and binding.

Also, *held,* the fact that the plaintiff's common council had passed an ordinance, imposing a penalty for a failure to procure a certificate for a license, did not operate to prevent plaintiff from maintaining the action to recover license fees.

Reported below 43 Hun, 614,

(Argued December, 16, 1889; decided January 28, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 2, 1887, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the court on trial at circuit.

The nature of the action and the facts are sufficiently stated in the opinion.

*John M. Scribner* for appellant. Whatever may have been the previous liability of the defendant for license fees, the act of 1874 (chap. 478), was in words or in substance a new charter granted to the defendant by the state for a consideration,

to-wit, the extension of the defendant's railroad and the increased public accommodation afforded by such extension. (Laws of 1850, chap. 140, § 3 ; Laws of 1860, chap. 10, p. 16 ; *Davis* v. *Mayor, etc.*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 id. 611 ; *People* v. *Kerr*, Id. 188; U. S. Const., art. 1, § 10.) A contract having been made by the sovereign with the defendant which is expressed and contained in the said act, chapter 478 of the Laws of 1874, to the effect that if the defendant would construct the extension of its railroad as thereby required, and put the same in operation for public accommodation, as it has done, the defendant should thereafter be allowed to use and operate its entire railroad, subject only to the provisions of the General Railroad Act of 1850, which contains no provisions for the payment of any license fees, it seems to be clear that the alleged ordinances of the common council passed respectively December 31, 1858, and March 24, 1875, do not affect the defendant. (*Mayor, etc.,*v. *S. A. R. R. Co.*, 32 N.Y. 261 ; *Mayor, etc.*, v. *T. A. R. R. Co.*, 33 id. 42.) The new contract of 1874, between the defendant and the state, having been actually executed on the part of the defendant, the state itself could not destroy or avoid the obligations of the contract on its part. (*Danolds* v. *State*, 89 N. Y. 36 ; *Dartmouth College* v. *Woodward*, 4 Wheat. 519 ; *Fletcher* v. *Peck*, 6 Cranch. 87, 137 ; *State of New Jersey* v. *Wilson*, 7 id. 164 ; *People* v. *Stephens*, 71 N. Y. 549 ; *Milhau* v. *Sharp*, 27 id. 611.) This action is strictly an action for recovery of license fees, and is founded on two ordinances of the common council, one adopted in the year 1858 and the other in the year 1875. These ordinances plainly provide for permits or licenses to be issued in advance for the privilege of running street cars. A license does not operate retrospectively. (*Calkins* v. *B,. etc.*, *G. Co.*, 1 T. & C. 546.) There can be no recovery by the plaintiff, either under this agreement or under the ordinance in question without allegation and proof that licenses were actually issued or tendered, and that payment of license fees was actually demanded. (*Weller* v. *Tuthill*, 66 N. Y. 351 ; *Santa Cruz* v. *S. C. R. R. Co.*, 56 Cal. 143, 149 ; *South-*

*wick* v. *F. N. Bk.*, 84 N. Y. 420; *Hogan* v. *Burton*, 16 N. Y. S. Rep. 65; *Dakin* v. *Williams*, 11 Wend. 70; *Lester* v. *Jewett*, 11 N. Y. 453; *Thompson* v. *Gardner*, 10 Johns. 404–405; *Beech* v. *Vanderburgh*, Id. 361.) The argument that the act of 1874 (chap. 478), was probably framed and passed at the instance of the company itself, is not supported by a particle of evidence. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 147; *Williams* v. *Mayor, etc.*, 105 id. 419–436; *Mayor, etc.* v. *Starin*, 106 id. 19.) Section 3 of the act of 1874 repeals all acts or parts of acts inconsistent with the provisions of this act, and hence the plaintiff is not entitled to exact license fees from the defendant. (*Heckmann* v. *Pinkney*, 81 N. Y. 215; *People* v. *G. & S. T. Co.*, 98 id. 78; *Lyddy* v. *Long Island City*, 104 id. 221.) There is no defect in the title of the act of 1874. It does not violate the provisions of section 16, article 3 of the Constitution of the state. (*People* v. *Briggs*, 50 N. Y. 558; *Brewster* v. *City of Syracuse*, 19 id. 117; *S. M. Ins. Co.* v. *Mayor, etc.*, 8 id. 252; 27 Ill. 534; *People* v. *Lawrence*, 41 N. Y. 139; *Fellows* v. *Mayor, etc.*, 8 Hun, 489; *In re Astor*, 50 N. Y. 367; *More* v. *Deyoe*, 22 Hun, 220; *Harris* v. *People*, 59 id. 601; *Matter of Volkenning*, 52 id. 650; *Village of Gloversville* v. *Howell*, 70 id. 290; *In re Dep. Pub. Parks*, 86 id. 439; *People* v. *Banks*, 67 id. 572; *In re L. & W. O. Home*, 92 id. 120; *In re United States*, 96 id. 227; *In re Mayor, etc.*, 99 id. 569; *Comrs.* v. *Dwight*, 101 id. 9; *McIntire* v. *Allen*, 43 Hun, 125; *In re Knaust*, 101 N. Y. 194.)

*David J. Dean* for respondents. By the original concession, and the subsequent action of the common council and the legislature, the defendants became bound to pay to the city fifty dollars and twenty-five dollars, respectively, license fees upon the cars run on this route. (*Mayor* v. *D. D. R. R. Co.*, 112 N. Y. 140; *Mayor* v. *B. & S. A. R. R. Co.*, 97 id. 275.) The act of 1874, which authorized the change of terminus of the defendant's route in the defendant's interest, is to be construed liberally in favor of the public, strictly

against the grantee of the privileges therein conferred. (*Dermott* v. *State*, 99 N. Y. 107; *Lundon* v. *Mayor, etc.*, 93 id. 129; *Mayor, etc.*, v. *B. & S. A. R. R. Co.*, 97 id. 281; *O. F. Co.* v. *Fish*, 1 Barb. Ch. 547; *Thompson* v. *N. Y. & H. R. R. Co.*, 3 Sand. Ch. 625; *M. B. Co.* v. *U. & S. R. R. Co.*, 6 Paige, 554; *U. B. Co.* v. *Magee*, 6 Wend. 85; *A. & C. P. R. Co.* v. *Douglass*, 9 N. Y. 444; *F. Co.* v. *Hyde Park*, 97 U. S. 659; *Newton* v. *Comrs.*, 100 id. 561; *Rice* v. *A. & N. R. R. Co.*, 1 Black, 358; *S. C. Co.* v. *Wheeley*, 2 B. & Ald. 792; *Gildart* v. *Gladstone*, 11 East. 685; *K. D. Co.* v. *LaMarche*, 8 B. & C. 42; *L. & L. Canal* v. *Huster*, 1 id. 424; *Priestly* v. *Foulds*, 2 Scott's N. R. 205; *P. B. Co.* v. *Nance*, 6 id. 823; *Barrett* v. *S., etc., R. Co.*, 3 Scott, N. R. 803; *Blackmore* v. *G. C. Co.*, 1 M. & K. 154; *Scales* v. *Pickering*, 4 Bing. 452; *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 Conn. 294; *H. Bridge* v. *U. F. Co.*, 29 id. 210; *Dugan* v. *B. Co.*, 27 Pa. 303; *Comm.* v. *E. & N. R. R. Co.*, 27 Pa. St. 339; *Allegheny* v. *O. & P. R. R. Co.*, 26 id. 355; *Comm.* v. *C. P. R. Co.*, 52 id. 516; *R. & G. R. R. Co.* v. *Reid*, 64 N. C. 158; *B. Co.* v. *H. Co.*, 13 N. J. Eq. 81; *B. G. R. R. Co.* v. *W. Co.*, 10 Bush, 771; *M. S. Bank* v. *Dunkirk*, 54 Ala. 471; *F. R. R. Co.* v. *P. R. R. Co.*, 10 Fa. 145; *Mayor, etc.* v. *D. D. R. R. Co.*, 112 N. Y. 140; *Dermott* v. *State*, 99 id. 107.) A cardinal rule in the interpretation of statutes is that the intention of the law-makers is to control. (*Peo. ex rel.* v. *Comrs.* 95 N. Y. 558; *Peo. ex rel.* v. *Lacombe*, 99 id. 43.) The act of 1874, interpreted in the light of the foregoing principles, does not relieve the defendant from the obligation to pay the consideration stipulated for in the original concession of its franchise. (*In re Knaust*, 101 N. Y. 193; *Mark* v. *State*, 97 id. 572.) If the act of 1874 be deemed to comprehend an intent to release the defendants from payment of the license fees imposed by the terms of the original concession, it becomes to that extent unconstitutional. (Const. of N. Y., Art. 3, § 16; *S. M. Ins. Co.* v. *Mayor, etc.*, 8 N. Y. 253; *Town of Fishkill* v. *P. R. Co.* 22 Barb. 634; *People* v. *Hills*, 35 N. Y. 449; *People* v. *O'Brien*, 38 id. 193;

*Huber* v. *People*, 49 id. 132; *People* v. *Comrs.*, 53 Barb. 70; *People* v. *Allen*, 42 N. Y. 404; *Gaskin* v. *Meck*, 42 id. 186; *Astor* v. *N. Y. A. R. Co.*, 22 N. Y. S. R. 1; *People* v. *Sturtevant*, 9 id. 263; *Davis* v. *Mayor, etc.*, 14 id. 506; *Milhau* v. *Sharp*, 27 id. 611; *Mayor* v. *S. A. R. R. Co.*, 32 id. 261; *S. A. R. R. Co.* v. *Kerr*, 72 id. 330; *Fletcher* v. *Peck*, 6 Cranch, 87, 135; *People* v. *O'Brien*, 111 N. Y. 49; *Dartmouth College* v. *Wordward*, 4 Wheat, 518; *Tomlinson* v. *Jessup*, 15 Wall, 454, 457; *New Jersey* v. *Yard*, 95 U. S. 104, 113; *Commr.* v. *Essex Co.*, 13 Gray, 239, 253; *Webb* v. *Mayor, etc.*, 64 How. Pr. 10.)

HAIGHT, J. This action was brought to recover the amount of license fees alleged to have become due to the plaintiff for or in respect to passenger cars run by the defendant on its railroad, in the city of New York, during the years 1875 to 1881 inclusive.

The defense was, that the Legislature had relieved the defendant from any obligation to pay such license fees.

On the 6th day of September, 1851, the plaintiff entered into a contract with John Pettigrew and others, as parties of the second part, in and by which they were given the authority and consent of the common council to lay a double-track railroad from a point at the intersection of Chambers street and West Broadway, in the city of New York, along West Broadway to Canal street; thence along Canal street to Hudson street; thence to Eighth avenue; thence through Eighth avenue to Harlem river.

It was agreed on the part of the parties of the second part, that each of the passenger cars to be used on said road should be annually licensed by the mayor, and that they should annually pay for such license such sum as the common council may thereafter determine. It was further agreed on the part of the parties of the second part, that they would, within ten days after the execution of the agreement, organize themselves into an association or company to be called The Eighth Avenue Railroad Company, for the purpose of constructing, operating and man-

aging said railroad.   Such association having been organized, the defendant's railroad was in part constructed prior to the passage of chapter 140 of the Laws of 1854.   Thereafter, and on the first day of January, 1855, the association was incorporated under and by virtue of an act to authorize the formation of railroad corporations and to regulate the same, passed April 2nd, 1850, and the act amending the same ; and also by virtue of an act of the Legislature, entitled an act relative to the construction of railroads in cities, passed April 4th, 1854, being the act to which allusion has already been made.

The common council having fixed the license fee for two-horse cars at fifty dollars per year, and one-horse cars at twenty-five dollars, the same was paid by the defendant from the year 1860 down to and including the year 1874.   In that year, the Legislature passed chapter 478, entitled "An act to require The Eighth Avenue Railroad Company to extend its railroad route in the city of New York, and to regulate the use and operation of the railroad of said company."   By this act it was, in substance, provided, that the Eighth Avenue Railroad Company should extend its existing railroad tracks from their then terminus in Eighth avenue through that avenue to its intersection with Macomb's Dam road ; thence through and along that road to the westerly end of the bridge known as the Macomb's Dam bridge.   That it should run its cars over such extended route for the convenience of passengers and should receive the same fares as at that time charged and no more.   The second section provides as follows :   " When the extension required by this act shall be completed and put in operation, said company shall use and maintain and operate its railroad, during the term for which said company was incorporated, upon and along the several streets and avenues in the city of New York, upon and over which its railroad is now in use and operation, and upon and over such extension *subject only to the provisions of the General Railroad Act of this state with its amendments, which shall be applicable to the railroad and extension hereby granted except as herein provided.*"

The defendant, having complied with the provisions of this

act, claims that the General Railroad Act does not require it to pay any license fee, and that, under the provisions of the section quoted, it is relieved of all obligation to pay the plaintiff the license fee contracted for.

Our first duty, therefore, is to construe and determine the meaning of this provision. If, as is contended, the defendant may operate its road subject only to the provisions of the General Railroad Act, and is relieved of all conditions not appearing therein, it follows that it is relieved also of the condition that it should only propel its cars by horse power, and it could, if it saw fit, propel them by the power of steam. It, therefore, becomes important to determine if such a result was intended by the Legislature.

Assuming that by the expression, " The General Railroad Act of this State," chapter 140 of the Laws of 1850 were intended, although there are other railroad acts which are general in their provisions, it includes all amendments thereto, and we understand the word " amendments " in this connection to refer to all acts which, in effect, amend, modify or limit the provisions of the general act. That all acts *in pari materia* are to be taken together as if they were one law, and to be compared in their construction because they are considered as framed upon one system having one object in view. (Potter's Dwarris on Statutes, 189; Sedgwick on the Construction of Statutory and Constitutional Law, 209.)

Under the general act a railroad corporation may construct their road across, along or upon any street, which the route of its road shall intersect or touch, upon obtaining the consent of the common council of the city. (*Schaper* v. *B. & L. I. C. R. Co.,* 4 N. Y. S. R. 860.)

It may take and convey persons and property on its road by the power or force of steam. Chapter 140 of the Laws of 1854 does not, in express terms, amend the provisions of the general act, but it does provide that the common council of the several cities shall not thereafter permit to be constructed in either of the streets or avenues of the city a railroad for the transportation of passengers, which commences and ends in the city,

without the consent and authority of a majority in interest of the owners of property upon the streets in which the railroad is to be constructed being first had and obtained. So that after the passage of this act a railroad company, organized under the provisions of the general act, where its road commences and terminates in the city, as does the defendant's road, no longer has the right to construct its road along or upon the streets of the city without first complying with the conditions imposed by the provisions of the latter act. It is an act _in pari materia_ with the general act, and, in effect, amends, modifies and qualifies its provisions, and is, therefore, one of the acts subject to the provisions of which the defendant holds and operates its road under chapter 478 of the Laws of 1874.

Again, it will be observed that the act of 1854 is general in its provisions, applying to all of the cities in the state. It is one of the acts under which the defendant was incorporated. It is the act by which it acquired its grant or right to construct and operate its road, as we shall subsequently show. The act of 1874 does not amend or repeal any of the provisions of this act. It consequently appears to us that they are left standing with their full force and effect. Under the act of 1854 the common council of the city where the consent of a majority of the property owners has been obtained, is given the power to grant authority to construct and establish a railroad upon or in its street or streets, upon such terms, _conditions_ and stipulations in relation thereto as the common council may see fit to prescribe. Thus it may prescribe that the company shall propel its cars with horses instead of steam. It may regulate the manner in which the rails shall be laid and the streets kept in repair. It may also prescribe as a condition of the grant that the company pay a license fee for the cars that it runs upon its road. (_Mayor, etc._, v. _B. & S. A. R. R. Co._, 97 N. Y. 275.)

Conditions of this character were prescribed in the grant that was made, that now vests in the defendant, which it accepted, recognized and performed up to the time of the passage of the act of 1874.

It is urged however that these conditions were void for the reason that the common council had no power to make the grant in question. At the time the grant was made this was undoubtedly true. (*Davis* v. *Mayor, etc.*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 id. 611.)

But the act of 1854, to which we have already referred, ratified and confirmed the grants, licenses, resolutions and contracts made by the common council, so that thereafter they became good, valid and binding. It is under the provisions of this act that the grant to construct and operate a railroad in the streets named was made valid. It is the act under which the defendant was incorporated and took title to its property and franchises. The same words which confirmed the grant confirmed the contract, and if one is made valid the other must be also.

Upon the argument of this appeal questions were discussed involving the validity of the act of 1874 under the Constitutions of the United States and of the state of New York, which questions we do not deem it necessary to here consider, for, under the view which we take of the act of 1874, there is nothing which limits, repeals or modifies the act of 1854, and that the defendant holds and operates its road subject to the provisions of the general act as modified and qualified by the provisions of that act.

Nor do we think that the fact that the common council had passed an ordinance imposing a penalty for a failure to procure a certificate for a license operates to prevent the plaintiff from maintaining its action to recover the license fee. The right to maintain such action was affirmed in the case of *Mayor, etc.,* v. *B. & S. A. R. R. Co. (supra)*.

Nor do we think that case distinguishable from the one under consideration on account of the provision in that case that the company was bound to pay the license fee by virtue of the special provisions of its charter, independent of the ordinance of the common council, for in this case, under the provisions of the contract, which became valid under the act of the Legislature to which we have referred, it was expressly

agreed that the company should pay the license fee thereafter to be fixed by the council.

It consequently follows that the judgment should be affirmed, with costs.

All concur, VANN, J., in result.

Judgment affirmed.