such powers and rights cannot be effectually divorced from such obligations and duties. The latter are correlatives to the former, and constitute the consideration for the corporate franchises, and their performance may be exacted as a condition of corporate existence. Hence, when the defendant took the property, rights, privileges, and franchises of the Bleecker Street & Fulton Ferry Railroad Company, it took them burdened with its charter obligations. Taking the place of that company as to its charter powers and rights, it necessarily took its charter obligations and duties. It could not have exercised the former without discharging the latter."

The lessee company, having thus assumed the obligations imposed upon the lessor by its charter, was bound to perform such obligations; but as this obligation was imposed upon the Sixth Avenue Railroad Company only for the cars used in operating the road, when it used no cars in said operation, it was under no liability to pay the license fee therefor.

I think, therefore, that the only cause of action alleged in this complaint was a cause of action against the Metropolitan Street Railway Company for the license fees for the cars actually used by that company in the operation of the road; and for that reason this joint and the separate demurrer that causes of action were improperly united were properly overruled. ·

It follows that the judgment appealed from, so far as it overrules the joint demurrer of the defendants and the separate demurrers of the Sixth Avenue Railroad Company and the Houston, West Street & Pavonia Ferry Railroad Company, should be reversed, and the demurrers sustained, with costs in this court and in the court below, and that the judgment, so far as it overrules the separate demurrer of the Metropolitan Street Railway Company, should be affirmed, with costs, with leave to the Metropolitan Street Railway Company to answer on payment of costs in this court and in the court below. All concur.

(77 App. Div. 373.)

CITY OF NEW YORK v. TWENTY-THIRD ST. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. December 19, 1902.)

1. STREET RAILWAYS—MUNICIPAL REGULATION—LICENSE FEES—ORDINANCES—
    VALIDITY
       A city ordinance providing that every passenger car running in the city of New York below 125th street shall pay to the city the sum of $50 annually for a license, and prohibiting the running of cars without payment of the license fee, was not a police regulation, but was a mere imposition of a duty for the purpose of revenue, and was invalid in so far as it affected a street railway company, the franchise of which authorized the company to operate its cars without any other condition than payment of a certain percentage of its receipts.
       Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by the city of New York against the Twenty-Third Street Railway Company and others. From an interlocutory judgment overruling demurrers to the complaint, certain defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellants.
Chase Mellen, for respondent.

INGRAHAM, J.   Upon the demurrer of the Houston, West Street & Pavonia Ferry Railroad Company, there is presented the same question as is presented in the case of City of New York v. Sixth Ave. R. Co. (decided herewith) 79 N. Y. Supp. 319; and, for the reasons there stated, the judgment, so far as it overrules the demurrer of the Houston, West Street & Pavonia Ferry Railroad Company, must be reversed, and the separate demurrer of that corporation sustained.

The appellants in this case also attack the sufficiency of the complaint, alleging that it does not state facts sufficient to constitute a cause of action against either of them.   The complaint alleges that, under the authority conferred by chapter 823 of the Laws of 1869, the commissioners of the sinking fund of the mayor, aldermen, and commonalty of the city of New York sold at public auction to one Yeomans the right, privilege, and franchise to construct and operate a railroad through and along Twenty-Third street from the North to the East river for $150,000; that by chapter 521 of the Laws of 1872 the comptroller of the said municipal corporation was authorized and directed, on payment into the city treasury by Yeomans of the sum of $150,000, to issue to him or to his assignees the certificate specified in said act of 1869, to the effect that he, they, and their successors and assigns, are entitled to the grant of the rights, privileges, and franchises mentioned, described, and conferred in and by said act of 1869; that on or about the 29th day of January, 1872, the defendant, the Twenty-Third Street Railroad Company, filed its articles of association, and became a street surface railroad corporation, under and pursuant to the laws of the state of New York, and subsequently acquired the rights, privileges, and franchises conferred upon said Yeomans under and pursuant to the terms of said chapter 521 of the Laws of 1872, and that by chapter 100 of the Laws of 1873 said Twenty-Third Street Railroad Company was authorized to extend its tracks, and use and operate the same in connection with its then existing railroad, through certain streets and avenues in the city of New York; that at the time the act of 1873 took effect there was an ordinance of the common council of the mayor, aldermen, and commonalty of the city of New York in force which provided that each and every passenger railroad car running in the city of New York, below 125th street, shall pay into the city treasury the sum of $50 annually for a license, which ordinance was duly passed and approved by the mayor on December 3, 1858.

At the time the ordinance of 1858 was passed, various street railroad companies in the city of New York had been incorporated, with a condition imposing upon them an obligation to pay a license fee for the cars used by them in the operation of their railroads; and, as to railroads incorporated under such conditions, it has been held that this ordinance of the common council was operative, and that under the conditions of their charters they were liable for the license fee thereby provided for.   But the charter of the Twenty-Third Street Railroad was granted upon no such condition.   Its

right to use the franchise was acquired by a sale at public auction, by which the city of New York was entitled to receive a certain percentage of the receipts of the company, as a condition for the use of the public streets in the city of New York; but, so far as appears, there was no other condition imposed upon the company for a right to use the franchise granted to it by the legislature. The question presented, therefore, is whether this ordinance affects a railroad company expressly authorized by the legislature to operate its road in the public streets of the city of New York without requiring the company to pay a license fee for the cars used in the operation of its road.

In the case of Mayor, etc., of City of New York v. Second Ave. R. Co., 32 N. Y. 261, the question before the court depended upon the power of the municipal corporation to require the Second Avenue Railroad Company to pay the license fees provided for by this ordinance. That action was brought to recover the $50 per car imposed by the ordinance of 1858. The defendants admitted the facts alleged in the complaint, and set up as a defense an agreement made between the municipal corporation and the defendants' assignors, dated December 15, 1852, whereby permission was granted to such assignors to construct and operate a railroad in Second avenue. To this answer there was a demurrer, which was overruled. It was held that this ordinance was not binding upon a railroad corporation unless its charter or an agreement with the municipal corporation expressly provided that the railroad corporation should pay license fees. The court, in affirming a judgment overruling the demurrer, says:

"The plaintiffs must show, however, that the subject of the ordinance which they are seeking to enforce is one over which they have authority to legislate, and that it is a regulation of police and internal government, and not the mere imposition of a duty or sum of money for the purposes of revenue. * * * The only act enjoined by the ordinance in question is the payment of the fifty dollars, and the only act which it forbids and prohibits is the running of the cars without the payment of the money. * * * So with this ordinance; call what it requires, by the name of 'license" or 'certificate of payment,' or anything else, its primary, and, indeed, only, purpose is to take from the company, under coercion of the penalty which it imposes, the sum of fifty dollars annually for each car run upon the road, for the benefit of the city. The certificate which the company is to receive upon payment being made is called a 'license' in the ordinance. A license to do what the ordinance does not say; and, indeed, it could not with truth say a license or permission to employ the car in the transportation of passengers upon the road, for the absolute right to do that which had been not only acquired, but positively enjoined upon the company by the stipulations of the grant of the 15th day of December, 1852. It is vain, therefore, to speak of it or to treat it as a license or a regulation of police. It is the imposition of an annual tax upon the company, in derogation of its rights of property, and on that account is unlawful and void."

This case was followed by Mayor, etc., of City of New York v. Third Ave. R. Co., 33 N. Y. 42. That was an action to recover from the Third Avenue Railroad Company the $50 license fee required to be paid by the ordinance of 1858, instead of the $20 license fee required to be paid by the agreement with the city under which the Third Avenue Railroad Company constructed its railroad; and it was held

that the decision in the case of Mayor, etc., of City of New York v. Second Ave. R. Co., supra, disposed of the question presented; that—

"The increase of the sum payable as a license fee under the ordinance of 1858, beyond the amount provided for by the stipulations in the contract of 1858, so far as it was in derogation of the defendant's rights, must be deemed illegal and void. It was not the exercise of the power of municipal regulation reserved by the terms of the grant, and which the common council had no authority to alienate, but it was simply an attempt by one of the parties to a contract to revoke a provision inserted for the benefit of the other. The common council could not lawfully impose a penalty for noncompliance with an illegal exaction."

A question arising under this ordinance was again before the court of appeals in Mayor, etc., of City of New York v. Broadway & S. Ave. R. Co., 97 N. Y. 275. In that case the charter of the defendant railroad provided that the railroad authorized by the charter should be subject to "the payment to the city of the same license fee annually for each car run thereon as is now paid by other city railroads in said city." It was held that under this provision the defendant was bound to pay the license fee provided for by the ordinance of 1858; that there was a contract of the defendant, which arose from the provisions of the charter, by which it agreed to pay a certain sum reserved therein in consideration of the privileges conferred thereby; and in speaking of the cases of Mayor, etc., of City of New York v. Second Ave R. Co. and Mayor, etc., of City of New York v. Third Ave. R. Co., supra, it was said that as to those companies the ordinance was an imposition of an annual tax upon the property, and in derogation of its rights and property, and on that account was unlawful and void; that "in both those cases the question arising as to the validity of the ordinance was considered, having in view only such roads as were constructed either without any reservation whatever in the charter, or a different one from that provided for by the ordinance"; that the ordinance was valid as to the city railroads which were required by their charters or by contract with the city to pay a given sum to the city in consideration of the privileges conferred.

It would seem, therefore, to have been settled by these cases that, so far as this ordinance imposes a license fee upon corporations which have received a legal authority to construct and operate street railroads in the city of New York, where there is no obligation imposed by their charters or by contract to pay to the city of New York a license fee for cars used in the operation of their roads, this ordinance is not binding; it being in excess of the power of the common council to impose such an obligation. It would seem to follow, therefore, that the Twenty-Third Street Railroad Company, having been authorized by the legislature to construct and operate its road, without any reservation or condition which imposed upon that corporation an obligation to pay a license fee to the city of New York, was not subject to the ordinance of 1858, and there was no obligation to pay to the city of New York a license fee as therein provided. As there was imposed no liability upon the Metropolitan Street Railway Company to pay a license fee to the city of New York, except that which it assumed to pay as the obligation of the Twenty-Third Street Railroad Company when it acquired the property and franchise of the company, and as

there was no obligation upon the Twenty-Third Street Railroad Company to pay this license fee provided for by the ordinance of 1858, neither of these corporations is liable for the license fee therein provided.

The result, therefore, is that the judgment appealed from must be reversed, with costs, and the demurrer of all the defendants sustained, with costs, upon the ground that the complaint does not state facts sufficient to constitute a cause of action against either of them, with leave to the plaintiff to amend the complaint upon payment of costs in this court and in the court below. All concur, except VAN BRUNT, P. J., who dissents.