It may be difficult to compel unfaithful or reckless guardians of trust companies to observe the restrictions imposed by law upon them, but it would be a sorry day when the courts encourage or palliate violations of law that may result disastrously to many innocent persons who have confided their property to the safekeeping of institutions in the justifiable belief that they were being conducted in accordance with legal requirements and with all the safeguards the law has provided.

In my opinion the plaintiff has failed to establish a cause of action against the defendant, and the complaint must be dismissed upon the merits.

Complaint dismissed upon the merits.

---

(55 Misc. Rep. 134.)

### CITY OF NEW YORK v. NEW YORK CITY RY. CO.

(Supreme Court, Trial Term, New York County.  June, 1907.)

STREET RAILROADS—LICENSE FEE—COMPUTATION.

> The charter granted to the predecessor of the New York City Railway Company in 1860 provided for payment to the city of New York of the same license fee annually for each car run thereon as was paid by other city railroads.  In an action to recover car license fees, it appeared that a city ordinance in 1860 provided for the payment of $50 annually for every railroad car running in the city of New York below 125th street, and that the city railroads paid at that time and thereafter license fees only on the greatest number of cars in daily use during their busiest season, and not on every car during the year.  *Held* that, where defendant had paid license fees since that year on that basis, it was in accordance with the practical construction placed on the charter of its predecessor by the various administrations of the city, and it was not liable for any other fee.

Action by the city of New York against the New York City Railway Company to recover license fees.  On motion for dismissal of complaint or direction of verdict for defendant.  Granted.

W. B. Ellison, Corp. Counsel, for plaintiff.

Henry A. Robinson, for defendant.

GREENBAUM, J.  The defendant is the assignee of the "Broadway & Seventh Avenue Railroad Company," the original grantee of the franchise under which the Broadway Railroad was constructed. The legislative grant in 1860 to this company provided for "the payment to the city of the same license fee annually for each car run thereon as is now paid by other city railroads in said city."  It is stipulated that in 1860 there was in force an ordinance of the city of New York which provided for the payment of $50 annually for a license for "each and every passenger railroad car running in the city of New York below 125th street," etc.  It is also stipulated that the city railroads in 1860 paying $50 car license fees paid only upon the greatest number of cars in daily use during their busiest seasons, and not upon each and every car during the year.  It is conceded and proved that since 1860, for a period of upwards of 40 years, the defendant has paid license fees voluntarily or as the result of a judgment on the

basis of "$50 per car for the greatest number of cars in daily use during the busiest seasons" of the various years.

Defendant contends that the practical construction by the city of New York and the railroad companies of the car license obligation requires the payment only on the greatest number of cars in daily use at the busiest seasons of the year, and that it should not now be disturbed by the courts. The car license liability of the defendant is undoubtedly governed by the charter of its predecessor. Mayor, etc., v. Broadway & Seventh Ave. R. R. Co., 97 N. Y. 275, 284. There were two trials of the action last cited. In the opinion of the General Term on the reversal of the judgment in favor of the defendant rendered on the first trial, by Davis, P. J. (17 Hun, 242), referring to the charter obligation of the defendant in respect of license fees, it is stated:

"It prescribes that the payment shall be made annually for each car run on the defendant's road, and this of necessity includes the whole number regularly run and used for the transportation of passengers during the whole or any part of each year. The defendant would not be liable upon the whole number of cars owned by it, but only upon the number actually run for the transportation of passengers continuously or occasionally in each year."

In the unreported opinion of. the General Term, on affirmance of the judgment recovered by plaintiff on the second trial of the action, the court, referring to the basis or computation upon which the verdict against the defendant was taken, says, by Daniels, J., writing:

"The fees allowed to be recovered by the verdict were at the rate of $50 per car on the number of cars stipulated to have been in the daily use of the defendant at the busiest season, from and including the year 1870 to and including the year 1874; and the obligation to pay upon that basis resulted from as fair a construction of the language of the act as could be reasonably insisted upon by the defendant if it is to be enforced at all."

The language of the act of 1860, so far as it refers to the obligation to pay car license fees, is, to say the least, peculiar. Instead of fixing the fees at $50 per car in some definite manner, or making the fee dependent upon the then existing municipal ordinance on that subject, the act requires the payment "of the same license fee annually for each car run thereon as is now paid by other city railroads in said city." It may be that the wording of the act would lead one to suspect that it was purposely framed to obtain an advantage over the city, as observed by the court in Mayor v. Eighth Ave. Ry. Co., 43 Hun, 618, and in Mayor, etc., v. Dry Dock, etc., R. R., 47 Hun, 199, 202; but the fact nevertheless remains that the meaning of the language employed is somewhat obscure. Bearing in mind the uncertainty of the meaning of the act, and its uniform interpretation by various administrations, that the fees payable by the defendant are calculable on the greatest number of cars in daily use during the busiest season in the year, it seems to me that defendant is entitled to the benefit of the practical construction of the act given to it by so many public officers. There seems to be abundant judicial authority for reaching this conclusion. Troup v. Haight, Hopk. ch. 239; People ex rel. Williams v. Dayton, 55 N. Y. 367; Power v. Village of Athens, 99 N. Y. 592, 2 N. E. 609; Matter of W., S. A. & P. R. R. Co., 115 N. Y. 442, 22 N. E. 356; United States v. Alabama R. R. Co., 142 U. S. 615, 12 Sup. Ct. 306, 35 L. Ed. 1134.

The plaintiff seeks to overcome the effect of the doctrine of practical construction by the reasoning in Rochester R. R. Co. v. City of Rochester (decided by the United States Supreme Court on March 25, 1907, October term), 205 U. S. 236, 27 Sup. Ct. 469, 51 L. Ed. 784. As I read the opinion in that case, it merely holds that an exemption from taxation to a named corporation does not pass upon a sale or lease to another corporation. In the case at bar the obligation to pay a car license fee does not rest upon the city ordinance or a general statute of the state, but upon the charter provision. There is no exemption to pay a car license fee expressed in the charter; but, on the contrary, a liability to pay upon a supposed definite basis is imposed upon the company. From the views that I entertain, it follows that the objections of the plaintiff to the evidence submitted by defendant are overruled, and the objections of the defendant to the evidence offered by the plaintiff as to the number of cars used by the defendant are sustained.

In view of the stipulation that the defendant has made proper tender of the amount of the fees payable by it, the motions for a dismissal of the complaint or a direction of a verdict will be granted.