to establish defendant's liability was given by one Charnow, who says that defendant authorized him to tell the physician that he (the defendant) would pay for the services. The witness testifies positively, however, that he told the physician only that the defendant would "guarantee" the bill, and the guaranty was certainly not in writing. The plaintiff testifies that he had conversations with the defendant on the telephone and in person, but there is not a word as to the substance of these talks. Under these circumstances defendant is not liable. The obligation which the witness communicated to the doctor was a guaranty, and this was neither authorized by the defendant nor was it in writing. The obligation which the witness testified he was authorized to incur he never communicated to the plaintiff.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

(138 App. Div. 131.)

### CITY OF NEW YORK v. NEW YORK CITY RY. CO. (No. 1.)

(Supreme Court, Appellate Division, First Department. May 6, 1910.)

1. LICENSES (§ 6*)—POLICE POWER—LICENSE FEE ON PASSENGER CARS.

The common council of a city has no authority under its general police power to impose a license fee upon passenger cars operated over or along the streets by a railroad having a franchise to use the streets.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 5, 6; Dec. Dig. § 6.*]

2. STREET RAILROADS (§ 121*)—ORDINANCES—ENFORCEMENT BY IMPOSING PENALTY.

The authority conferred on a city to enact ordinances regulating the use of the streets, and to enforce such ordinances by penalties, does not authorize the enforcement of mere contract obligations by the enactment of penal ordinances for a breach thereof, and where a street car company had obtained its franchise by a grant which had been ratified by the Legislature, and by that franchise had obtained the right to operate cars along the public streets, conditioned upon its paying an actual charge designated as a license fee for each car, it being left to the common council to fix the license fee, and the license fee was fixed, the operation of the cars without paying the fee constituted a mere breach of private contract as distinguished from an unlawful act, and the city council could not by ordinance impose a penalty for a failure to pay the fee.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 121.*]

3. STREET RAILROADS (§ 22*)—ORDINANCES—ACCEPTANCE—ESTOPPEL.

The only reservation in a street car company's franchise being with respect to the enactment of ordinances in the exercise of the police power of the municipality aside from prescribing the license fees, an acceptance by the company of the penal provisions of the ordinance would not estop it from questioning its validity.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 31, 37, 62, 73, 85; Dec. Dig. § 22.*]

Appeal from Appellate Term.

Action by the City of New York against the New York City Railway Company. From a determination of the Appellate Term (117 N.

---

Y. Supp. 919) affirming a Municipal Court judgment for plaintiff, defendant appeals.   Reversed and dismissed.

See, also, 123 N. Y. Supp. 136.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

LAUGHLIN, J.   This action is brought to recover penalties for operating five cars over the line of railroad of the Sixth Avenue Company below 125th street in the city of New York on the 21st day of May, 1907, without having "affixed to some conspicuous place in" each of said cars a license for the car, as required by the provisions of sections 56 and 57 of article 1 of chapter 4 of the Code of Ordinances of the City of New York, in force on the 21st day of May, 1907.   The penalty was imposed by section 58 of said chapter of ordinances.   The question presented for decision is whether the ordinance, in so far as it imposes a penalty, is valid and enforceable.   It will facilitate the discussion of the legal question to have in mind the exact provisions of the ordinances.   They are as follows:

"Sec. 56. Each and every passenger railroad car running in the borough of Manhattan shall pay into the city treasury the sum of fifty dollars annually for a license; a certificate of such payment to be procured from the Mayor, except the one horse passenger cars, and the cars of the Ninth Avenue Railroad Company, which shall each pay the sum of twenty-five dollars annually for said license as aforesaid, and except such as pay the sum of three per cent or over on the gross receipts, or where the franchise has been sold at public sale to the highest bidder.

"Sec. 57. Each certificate of payment of license shall be affixed to some conspicuous place in the car, that it may be inspected by the proper officer, to be designated and appointed by the Mayor.

"Sec. 58. For every passenger car run upon any of the railroads without the proper certificate of the license, the proprietor or proprietors thereof shall be subject to a penalty of fifty dollars for each day every such car shall run, to be recovered by the corporation counsel, as in the case of other penalties, and for the benefit of the city treasury."

The penalty appears to have been imposed for a failure to affix the license to the car, and that is the theory on which the learned counsel for the city attempts to sustain the ordinance; but whether it be construed as imposing the penalty merely for a failure to so affix the license, or for a failure to obtain and affix the license, is not very material.   Nothing is licensed by or under the ordinance, nor is the use of the cars in any manner regulated in the interests of the public.   The license or permission to use the streets was given by the grant.   The license fee is neither a fine nor a penalty.   It is merely a charge for this particular use of the streets.   It is not contended that it is competent for the common council of the city, under its general police power, to impose a license fee upon passenger cars operated over or along the public streets, and it was long since held that such authority does not exist with respect to a railroad having a franchise to use the

streets. City of New York v. Second Avenue R. R. Co., 32 N. Y. 261. See, also, Mayor, etc., v. Third Avenue R. R. Co., 33 N. Y. 42. By virtue of the original grant of this street railway franchise, as ratified by the Legislature, to which the defendant succeeded, it was provided that each passenger car should be annually licensed by the mayor, and such sum should be paid for the license as the common council should determine. The common council did thereafter, by an ordinance approved by the mayor on the 31st day of December, 1858, fix the annual license fee for each car at the sum of $50. In an action brought by the city against this defendant to recover license fees for operating cars under the franchise in question, this court had occasion recently to consider the original grant, the act of the Legislature ratifying it, and the ordinance fixing the annual license fee, and in the opinion then delivered the material facts with respect thereto were stated and, therefore, need not now be restated, and we held that the defendant was liable, and the judgment was affirmed by the Court of Appeals on the opinion of this court. City of N. Y. v. N. Y. City Ry. Co., 126 App. Div. 39, 110 N. Y. Supp. 722; affirmed 193 N. Y. 679, 87 N. E. 1117.

The numerous cases brought for the recovery of car license fees indicate that the ordinance with respect to procuring a license annually and posting the same in the cars has not been enforced, and, notwithstanding the fact that the original ordinance was enacted more than 50 years ago, our attention has been drawn to no decision, and we find none, authoritatively adjudicating with respect to the right of the city to enforce compliance with the ordinance by imposing a penalty for a violation thereof. The authority of the common council to pass an ordinance fixing the license fee, where, by virtue of the grant, or of an act of the Legislature, the duty was imposed on the street railway company of paying a license fee to be fixed by the common council, was sustained by Mayor, etc., v. Broadway & Seventh Ave. R. R. Co., 97 N. Y. 275, and was recently sustained by City of New York v. New York City Ry. Co., supra., as was also the right of the city to recover the license fee regardless of whether or not a formal license had been contemplated by the ordinances. It appears that an action was brought in behalf of the city to recover penalties of the Third Avenue Railroad Company for running cars without paying the license fee imposed by the ordinance; but the grant to the Third Avenue Railroad Company prescribed a license fee, and it was held that the original grant governed, and that it was not competent for the city, by ordinance or otherwise, to require the payment of a greater license fee. Mayor, etc., of N. Y. v. Third Ave. R. R. Co., supra.

This action was tried on the theory that said sections 56, 57, and 58 of article 1 of chapter 4 of the Code of Ordinances of the City of New York, in force on the 21st day of May, 1907, were the same as the provisions of the original ordinances enacted in 1858. Appellant now claims that said section 58 is not the same as the original ordinance, and it cites in its reply brief a reference to the original ordinance in. the printed book of ordinances. Sections 1, 2, and 3 of chapter 41, Valentine's New York City Ordinances, Revision of June 20, 1859. On the trial the original ordinances of 1858 were offered in evidence,

but only section 1 thereof is printed in the record. It was stipulated in advance of the trial that either party might read in evidence upon the trial from the printed books of ordinances, but this was not done with respect to sections 2 and 3 of the original ordinances on this subject. Strictly speaking, we probably cannot take judicial notice of the ordinances even in these circumstances; but the change claimed to have been made in some revision of the ordinances was in section 3, of which said section 58 was a re-enactment or revision and now imposes a penalty of $50 per day, whereas, in the original it is claimed that no period was prescribed.

In the view we take of the case, however, that is not material to a decision of the appeal. It is conceded that the license fees have now all been paid; but it was proved with respect to the five cars in question that the license fees had not been paid at the time they were operated. If, as appears to be the reasonable construction of the ordinance, the penalty was imposed for a failure to affix the license to the car so that police officers or inspectors representing the city might discover on inspection of the car whether or not the license fee had been paid, then manifestly the penal provision of the ordinance could not be sustained. The city authorities could by their own records preserve evidence with respect to the payment of the license fees and readily determine therefrom whether or not a license fee had been paid for a particular car for such cars are numbered. We are not now concerned with the question as to whether it would have been competent for the Legislature to have so provided by statute. The question is: Did the Legislature attempt to confer authority upon the legislative body of the municipality to impose such penalty, and, if so, was it competent for it to do so?

It is not claimed that there was any specific delegation of authority by the Legislature to enact ordinances on this subject; but it is contended, as we understand the argument of the learned counsel for the city, that, under the general power to enact ordinances regulating the use of the streets and affecting the public welfare, the common council have authority to prescribe this penalty. Of course, where it is unlawful to conduct a business without a license, it is competent for the Legislature to authorize the local Legislature, or some board, body, or official representing the city, to prescribe a license fee and to prescribe a penalty for conducting the business without a license. The confusion here has arisen from the use of the word "license" with respect to the annual charge to be paid by the railroad company for each passenger car operated in the public streets. The business of the street railway company, however, was neither prohibited nor licensed by this ordinance. The company obtained its franchise by a grant in the nature of a contract, which was ratified by the Legislature prior to the enactment of the ordinance, and by that franchise it obtained the right to operate passenger cars for hire along the public streets covered by its grant. This right, however, was conditioned upon its paying an annual charge designated as a "license fee" for each car, and it was left to the common council to fix and determine that charge or license fee.

It may well be that, after the charge or license fee was fixed, as provided in the grant, the company had no right to operate its cars until the license fee was paid; but, if so, that disability arose from the provisions of the grant, which constituted a contract between the municipality and the company. The operation of the cars without paying the license fee may have been a violation of the grant, but it constituted a mere breach of private contract, as distinguished from an unlawful act. There was no more danger to the public in the operation of a car before the license fee was paid, than there was after it was paid. The public health and safety were not affected by the question as to whether or not the license fee was paid. The business was lawful, and it had been duly authorized. It only remained for the railway company to perform its contract obligation to pay the city the annual charge reserved for the use of the streets, and for a breach of that obligation the city had a right to recover the license fee. It was no more competent for the common council to impose a penalty upon the railroad company for a failure to perform its contract obligation to pay the city the annual charge or license fee, than it would be for it to impose a penalty upon a contractor for a violation of a contract between him and the municipality with respect to ordinary contract work with respect to an obligation which he owed to the city by virtue of the terms of his contract.

The authority conferred by the Legislature to enact ordinances and to enforce the same by imposing penalties does not authorize the enforcement of mere contract obligations by the enactment of penal ordinances for a breach thereof. It is further contended in behalf of the city that the company by accepting the provisions of the ordinances is estopped from questioning their validity. It is not shown in what manner the alleged acceptance was manifested, and for aught that appears there was no formal acceptance of the penal provisions of the ordinance. But, if this had been such, acceptance would not constitute an estoppel, for in the grant the only reservation was with respect to the enactment of ordinances in the exercise of the police powers of the municipality aside from prescribing the license fees. In no view of the case, therefore, was there authority to enact the penal provision of this ordinance.

It follows that the determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs to the appellant, and the complaint should be dismissed, with costs. All concur.

―――――――

(138 App. Div. 138.)
### CITY OF NEW YORK v. NEW YORK CITY RY. CO. (No. 2.)

(Supreme Court, Appellate Division, First Department. May 6, 1910.)

Appeal from Appellate Term.

Action by the City of New York against the New York City Railway Company. From a determination of the Appellate Term (117 N. Y. Supp. 919) affirming a Municipal Court judgment for plaintiff, defendant appeals. Reversed and dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.